UNITED STATES ex rel. WILLIAMS, Captain, Quartermaster Reserve Corps, United States Army, v. BARRY, Major General, United States Army.

(District Court, S. D. New York. July 9, 1919.)

1. ARMY AND NAVY ☞44(2)—COURTS-MARTIAL NOT DEPRIVED OF JURISDICTION BY CRIMINAL CODE.

Act Oct. 23, 1918, amending Criminal Code, § 35, while relating to the same subject-matter as article 94 of Articles of War (Comp. St. § 2308a [94]), and applying to both civilians and persons in the military or naval service, does not amend or repeal such article, nor deprive courts-martial of jurisdiction in respect to persons in the military and naval service.

2. SEARCHES AND SEIZURES ☞7—SEIZURE OF DOCUMENTS OR ARMY OFFICER NOT UNLAWFUL.

The seizure of documents, belonging to an army officer charged with an offense, from his desk, to which he voluntarily turned over the key, *held*

not a violation of his constitutional rights, whether or not the documents were used on his trial by court-martial.

3. ARMY AND NAVY ⬦⟹47—ARTICLES OF WAR AS TO CONFINEMENT OF PRISONER NOT APPLICABLE TO CONFINEMENT AFTER CONVICTION.

The provisions of article 70, Articles of War (Comp. St. § 2308a[70]), limiting the time of confinement of persons placed under arrest, relate to the time before trial, and have no application to confinement after trial and while awaiting execution of sentence.

4. HABEAS CORPUS ⬦⟹70—JURISDICTION OF COURT-MARTIAL BEFORE PROMULGATION OF SENTENCE NOT AFFECTED BY HABEAS CORPUS PROCEEDING.

The suing out and service of a writ of habeas corpus by an army officer after his trial by court-martial, but before the service upon him of the order promulgating the sentence, held not to oust the court-martial of jurisdiction, nor to affect the validity of the order subsequently served.

Habeas Corpus. Petition by Frederick R. Williams, Captain, Quartermaster Reserve Corps, United States Army, against Maj. Gen. Thomas H. Barry. Writ discharged.

Ignatius A. Scannell, of New York City, for petitioner.

Francis G. Caffey, U. S. Atty., of New York City (William F. Kelly, Major Judge Advocate U. S. A., and Peter B. Olney, Jr., Asst. U. S. Atty., of New York City, of counsel), for respondent.

MAYER, District Judge. At a general court-martial convened pursuant to Special Order No. 234, Headquarters Eastern Department, on December 6, 1918, Williams was arraigned and tried on certain charges and specifications under the ninety-fourth, ninety-third, and ninety-sixth Articles of War (Comp. St. § 2308a). He was found not guilty of the ninety-third Article of War, but guilty of some specifications under both the ninety-sixth and ninety-fourth Articles of War.

Before the findings and sentence of the court-martial were promulgated, petitioner sued out a writ of habeas corpus in this court, to which a return was made, and this return was traversed by Williams. After the service of the writ, findings and sentence were promulgated, and Williams was dismissed from the service and sentenced to confinement at hard labor for five years. He now asserts that his constitutional rights were violated in the following respects:

(1) That all the charges and specifications made under the ninety-fourth Article of War related to the alleged commission of offenses prior to October 23, 1918, the date when a new statute was enacted (40 Stat. 1015, c. 194), which amended section 35 of the United States Criminal Code, and thereby altered the situation of petitioner to his disadvantage, and was thus ex post facto as to him.

(2) That the proceedings at the court-martial were void and in violation of the rights of petitioner under the fourth and fifth Amendments, in that the commander of the Department of the East, who appointed the general court-martial to try petitioner, was his accuser and prosecutor, in violation of the eighth Article of War and in that petitioner's papers and effects were seized by the commander before trial and retained by him, although they were material and necessary for the proper defense of petitioner, and also in that, although demand

was duly made for the return of the papers, both of the commander and of the court-martial which tried petitioner, such demand was refused by both the commander and the court-martial.

(3) That in violation of the Fifth Amendment, petitioner is being held in custody without due process of law, in violation of the Seventieth Article of War, in that he has been in close confinement for over 40 days after a copy of the charges had been served upon him.

(4) That the attempted promulgation of the findings and sentence of the court-martial was null and void, as in violation of the Fifth Amendment, in that it was an order published by the commander of the Department of the East after this writ of habeas corpus had been served upon petitioner, and petitioner was therefore not in the custody of the commander, but in the custody of this court, and therefore that the sentence, involving dismissal from the army, was void and in violation of petitioner's rights under the Fifth Amendment, because without confirmation of the President of the United States.

The contentions will be taken up in order.

[1] 1. The alleged ex post facto operation of the act of October 23, 1918.

Act April 10, 1806, c. 20, 2 Stat. 359, was the first legislation "establishing rules and articles for the government of the armies of the United States." This statute contained 101 articles, none of which, however, dealt with the subject-matter of the present article 94 of the Articles of War.

The next legislation was Act March 2, 1863, c. 67, 12 Stat. 696, entitled "An act to prevent and punish frauds upon the government of the United States." This act applied, in section 1 thereof, exclusively to "any person in the land or naval forces of the United States, or in the militia in active service of the United States," and also provided in section 1, in respect of offenses against the act:

"And every person so offending may be arrested and held for trial by a court-martial, and if found guilty shall be punished by fine and imprisonment, or such other punishment as the court-martial may adjudge, save the punishment of death."

Section 2 was, in effect, the same, applying, however, to persons who received discharge or dismissal from the service subsequent to committing a violation of the act. Section 3, however, dealt with civilians, and the treatment provided for in section 3 was quite different from that in sections 1 and 2. Under section 3, after providing for forfeiture and payment to the United States of amounts therein named, it was further provided:

"And such forfeiture and damages shall be sued for in the same suit, and every such person shall in addition thereto, on conviction in any court of competent jurisdiction, be punished by imprisonment not less than one, nor more than five years, or by fine of not less than one thousand dollars, and not more than five thousand dollars."

Section 1342 of the United States Revised Statutes (Comp. St. § 2308a) provided:

"The armies of the United States shall be governed by the following rules and articles. * * *"

This is the first section of chapter 5, which is entitled "Articles of War." The sixtieth Article of War, contained in chapter 5, is the same as sections 1 and 2 of the act of March 2, 1863. Chapter 5 of title LXX in U. S. Revised Statutes is entitled "Crimes against the Operations of the Government," and section 5438 (Comp. St. 10199) substantially re-enacted section 3 of the act of March 2, 1863.

The difference, however, between section 3 of the act of March 2, 1863, and section 5438 of the Revised Statutes, is as follows: Section 3 refers "to any person not in the military or naval forces of the United States, nor in the militia," etc., while section 5438 refers to "every person. * * *"

Substantially to the same effect, although differing in some detail, is the act of May 30, 1908 (35 Stat. at Large, 555, c. 235). Section 5438 of the Revised Statutes is now section 35 of the United States Criminal Code (Comp. St. § 10199). By the act of August 29, 1916 (39 Stat. at Large, 650, c. 418), the Articles of War were again revised, and former Article of War 60 became Article 94. It will thus be seen that up to this point Congress had two series of statutes, one designed to deal solely with those in the military and naval services, and the other designed to deal with any person whether in civilian life, or in the military or naval service. There were doubtless many reasons for the necessity of these two different systems. It is sufficient to point out that, where an offense of the character denounced is committed by both a civilian and a member of the military or naval service, it may be highly important to try both accused before the same tribunal at the same time. As a civilian could not be tried before a court-martial, the only course left open to Congress was to provide that members of the military and naval forces could be tried before civil courts of competent jurisdiction.

Under the ninety-fourth Article of War, the punishment is as follows:

"Shall * * * be punished by fine or imprisonment, or by such other punishment as a court-martial may adjudge, or by any and all of said penalties."

Act Oct. 23, 1918, c. 194, 40 Stat. 1015, amended section 35 of the Criminal Code of the United States. The subject-matter is the same as that set forth in the ninety-fourth Article of War. The punishment however, is different from that in the ninety-fourth Article of War, the act of October 23, 1918, providing that the convicted person "shall be fined no more than ten thousand dollars or imprisoned not more than ten years or both." The act applied to "whoever" shall do the things prohibited; i. e., to any person.

It is entirely plain from the foregoing that Act Oct. 23, 1918, does not in any manner refer to or amend or repeal the ninety-fourth Article of War, and does not deprive courts-martial of their jurisdiction in respect of persons in the military and naval services. This Act Oct. 23, 1918, is merely the latest legislation logically carrying down to date statutes which have permitted the trial of civilians and/or members of the military and naval forces in the civil courts, and does

not in any manner interfere with a trial by court-martial as provided in the Articles of War.

It follows, from the foregoing, that petitioner has not, on this ground, any cause of complaint.

[2] 2. There is no merit in the contention that the commander, who appointed the general court-martial, was the accuser and prosecutor of petitioner. The record is to the contrary. Such contention is therefore not sustained.

In view of the record made by the petitioner, the amended return, and the traverse, testimony was taken in respect of the alleged illegal seizure of writings belonging to petitioner. Briefly stated, what happened was that Capt. Busby, of the military intelligence branch of the army, had an interview with petitioner, and petitioner, in order to satisfy Capt. Busby that he was wrongly accused and could make satisfactory explanation, gave Capt. Busby the keys to his desk or safe-deposit box at the military camp at Allentown, Pa. Thereafter Capt. Busby and Mr. Richards, a civilian volunteer, together went to the Camp at Allentown, Pa., and, after conforming with certain military routine, obtained various papers belonging to the petitioner from the drawer or box in which petitioner had kept them.

Capt. Busby, prior to entering the army, had been a police officer in the New York police department, devoting most of his official service to detective work. I was fully impressed with the truth of Capt. Busby's testimony. He is an experienced detective, and apparently an efficient man, and there is no reason to doubt any of the substantial matters to which he testified.

In the details as to search he was corroborated by Mr. Richards, who also impressed me as an honorable man who rendered service to the government during the war. The petitioner contradicted the testimony of Capt. Busby in regard to some details; but, on the substantial point as to whether the keys were voluntarily delivered by petitioner to Capt. Busby, petitioner, in effect, corroborated Capt. Busby.

The result is that the case falls well within the principle of Perlman v. United States, 247 U. S. 7, 38 Sup. Ct. 417, 62 L. Ed. 950, and does not in any sense disclose acts in violation of petitioner's constitutional rights. Further, it appears from the record that not a single paper or writing obtained by Capt. Busby in the manner above indicated was offered or received in evidence at the trial before the court-martial, nor does it affirmatively appear that the information obtained from said papers was used before the court-martial, although, had such information been used, there would not have been error, in view of the doctrine of the Perlman Case, supra.

The prosecution asked some questions leading up presumably to an intended offer in evidence of a stub check; but, after discussion, the question was withdrawn. The evidence on this point was independently obtained by the government, and, in any event, this stub check incident was well within the doctrine of Fitter v. United States, 258 Fed. 567, —— C. C. A. ——, recently decided by the Circuit Court of Appeals for the Second Circuit.

[3] 3. The provisions of article 70 of the Articles of War refer to arrest and custody before and not after trial. As petitioner has been tried and convicted and is merely being held for execution of sentence until after the determination of this application, there is not, as against him, any violation of article 70.

4. Under this contention, by petitioner, supra, (a) it was argued that the order directing the sentence, which extended to dismissal from the army, must be approved by the President because, at the time that the order was promulgated, a state of war did not exist. This contention needs only the comment that it is without merit because a state of war did exist.

[4] (b) It was further argued that, because the order promulgating the sentence was served upon petitioner after the issuance of the writ, such order was void. The order merely promulgated a sentence which had theretofore been approved, and the fact that petitioner sued out a writ in this court before a copy of the order was served upon him did not in any manner oust the military authorities of their jurisdiction. All that has happened is that petitioner has been produced before this court and is in the custody of this court, but such procedure and result do not in any manner prevent the making by the military authorities or the issuance by them, or the subsequent service by them, of an order promulgating the sentence.

It would, indeed, be subversive of the orderly administration of justice by courts-martial, if a writ of habeas corpus could, in such circumstances, oust courts-martial of jurisdiction.

Writ dismissed and petitioner remanded.