(93 South. 293)

## BANKS v. STATE. (5 Div. 375.)*

(Court of Appeals of Alabama. June 30, 1921. Rehearing Denied Jan. 31, 1922.)

1. **Constitutional law** &#x269C;&#x27A1;½ — **Constitution is supreme law of state.**

The Constitution is the supreme law of the state, and to it all rules of evidence, procedure, and expediency in conflict with its mandates and prohibitions must yield.

2. **Constitutional law** &#x269C;&#x27A1;18 — **Reordaining or substantial reproduction adopts construction by courts.**

The reordaining or substantial reproduction of a provision of the organic law amounts to an adoption of the settled construction which the judiciary has placed upon it. (Response of Supreme Court to certified questions.)

3. **Criminal law** &#x269C;&#x27A1;393(1)—**Searches and seizures** &#x269C;&#x27A1;7—**Evidence obtained by illegal search not inadmissible.**

Const. 1901, art. 1, §§ 5, 6, prohibiting unreasonable searches and seizures and compulsory self-incrimination, do not render inadmissible evidence obtained on an illegal search of defendant's house and appurtenant premises without a search warrant, or any legal justification or excuse, and the admission of such evidence does not violate defendant's rights thereunder. (Response of Supreme Court to certified questions.)

4. **Searches and seizures** &#x269C;&#x27A1;7—**Witnesses** &#x269C;&#x27A1;293—**Provisions of United States Constitution do not limit the powers of the states.**

Const. U. S. Amends. 4, 5, prohibiting unreasonable searches and seizures, and providing that no person shall be compelled in a criminal case to be a witness against himself, operate only on the national government, and are not limitations on the power of the states in respect of their own people or citizens. (Response of Supreme Court to certified questions.)

5. **Witnesses** &#x269C;&#x27A1;297—**Prohibition of compulsory self-incrimination relates to strictly testimonial acts of accused, and not to independent acts of extraneous persons.**

The constitutional prohibition of compulsory self-incrimination is directed to the accused person in the capacity of a witness and to strictly testimonial self-incrimination, and does not include the independent acts of extraneous persons. (Response of Supreme Court to certified questions.)

6. **Witnesses** &#x269C;&#x27A1;293—**Immunity from compulsory self-incrimination not privilege or immunity of citizens of United States which state cannot abridge.**

The right of immunity from compulsory self-incrimination is one of the class of rights which state governments were created to establish and secure, and not one of the privileges and immunities of citizens of the United States as such, which the states are forbidden to abridge by Const. U. S. Amend. 14. (Response of Supreme Court to certified questions.)

7. **Constitutional law** &#x269C;&#x27A1;206(1), 266—**Criminal law** &#x269C;&#x27A1;393(1), 394 — **Admission of evidence obtained by illegal search violates no rights under federal Constitution.**

The introduction on a criminal trial of evidence obtained through an illegal search of defendant's house and premises violated no right secured to her under Const. U. S. Amend. 4, prohibiting unreasonable searches and seizures, Amendment 5, prohibiting compulsory self-incrimination, or Amendment 14, relative to due process of law, and the abridging of privileges and immunities of United States citizens. (Response of Supreme Court to certified questions.)

Appeal from Circuit Court, Russell County; J. S. Williams, Judge.

Mary Banks was convicted of violating the prohibition law, and she appeals. Affirmed.

Frank M. de Graffenried, of Seale, for appellant.

A search made without a proper search warrant is illegal and unauthorized, when made without the consent of the occupant of the premises, and evidence thus obtained is not admissible. Sections 5 and 6, Const. 1901; articles 4 and 5 of Amendments, U. S. Const.; 182 Ala. 475, 62 South. 77, Ann. Cas. 1915D, 436; 34 Ala. 216; 219 U. S. 219, 31 Sup. Ct. 145, 55 L. Ed. 191; 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319; 168 U. S. 532, 18 Sup. Ct. 183, 42 L. Ed. 568; 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647; 41 Sup. Ct. 316; 34 Ala. 311; 205 Ala. 386, 87 South. 375; 175 U. S. 175, 20 Sup. Ct. 77, 44 L. Ed. 119; 194 U. S. 263, 24 Sup. Ct. 650, 48 L. Ed. 965; 199 U. S. 425, 26 Sup. Ct. 87, 50 L. Ed. 256; 162 U. S. 563, 16 Sup. Ct. 890, 40 L. Ed. 1069; 100 U. S. 339, 25 L. Ed. 676; 123 U. S. 131, 8 Sup. Ct. 21, 22, 31 L. Ed. 80; 211 U. S. 79, 29 Sup. Ct. 14, 53 L. Ed. 97; 195 Ala. 124, 24 Sup. Ct. 797, 49 L. Ed. 114, 1 Ann. Cas. 655.

Harwell G. Davis, Atty. Gen., for the State.

The proposition asserted by the appellant has already been determined adversely to her contentions. 104 Ala. 35, 16 South. 85, 53 Am. St. Rep. 17; 168 Ala. 33, 53 South. 292; 201 Ala. 198, 77 South. 724; 211 U. S. 79, 29 Sup. Ct. 14, 53 L. Ed. 97; 82 Kan. 787, 109 Pac. 654, 32 L. R. A. (N. S.) 772, 136 Am. St Rep. 136; 92 Ala. 102, 9 South. 515, 13 L. R. A. 120, 25 Am. St. Rep. 23.

---

&#x269C;&#x27A1;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Certiorari denied 207 Ala. 503, 93 South. 472.

BRICKEN, P. J. Mary Banks, the appellant, was convicted in the circuit court of Russell county, Ala., of the offenses of distilling and of having in her possession a still, appliance, etc., as was averred in the indictment presented against her by the grand jury of said county. The evidence upon which the defendant in the court below was convicted was without dispute. The evidence presented by the record in this case was as follows:

The sheriff and deputy sheriff of said county, without any search warrant and without any legal justification or excuse, searched the dwelling house and appurtenant premises of the appellant, and there found a still, or appliance, which each of said officers testified was suitable and adapted to the distillation of prohibited liquors, and they also found, as testified to by each of them, certain beer being made ready for distillation into moonshine whisky, or other prohibited liquors or beverages.

The defendant in the court below first objected to the appearance of each of said witnesses, and to any testimony that might be elicited from them, or either of them, upon the grounds that said testimony was procured by said witnesses through an illegal and unwarranted search of her dwelling house and appurtenant premises, and in violation of article 1, § 5, of the Constitution of the state of Alabama, and also in violation of article 1, § 6, of the Constitution of the state of Alabama. Objections to the testimony of each of said witnesses were likewise interposed as said testimony was adduced, and by appropriate and repeated exceptions to adverse rulings of the trial court upon the insistence of the defendant in the court below that the procurement and admission of such testimony was in violation of her constitutional rights, specifically set out in article 1, §§ 5 and 6, respectively, of the Constitution of the state of Alabama, prohibiting unreasonable searches and seizures, and prohibiting self-incrimination. The same constitutional questions are presented by this appeal to this court.

The question of prime importance in this case is: What judicial construction shall be given to article 1, § 5, of the Constitution of this state, which prohibits unreasonable searches and seizures?—because it is without dispute that all of the testimony offered upon the trial of said case was procured through a search of the dwelling house and appurtenant premises of the appellant, made by the sheriff and deputy sheriff of said county without any search warrant or other legal process. Article 1, § 5, of the Constitution of the state of Alabama, provides as follows:

"That the people shall be secure in their persons, houses, papers, and possessions from unreasonable seizure or searches, and that no warrants shall issue to search any place or to seize any person or thing without probable cause, supported by oath or affirmation."

A consideration of the foregoing constitutional provision was had by the Supreme Court in the case of Shields v. State, 104 Ala. 35, 16 South. 85, 53 Am. St. Rep. 17, which case was followed by the cases of Pope v. State, 168 Ala. 33, 53 South. 292, and Robertson v. City of Montgomery, 201 Ala. 198, 77 South. 724, and which case was also followed by the Court of Appeals in the case of Bell v. State, 16 Ala. App. 36, 75 South. 181. In the Shields Case, supra, it was held that:

"Evidence obtained by a search, which was illegal and unauthorized, is admissible to fix the guilt of a criminal offense upon the person searched, and the admission of such evidence so obtained is not violative of the constitutional guaranty that a person accused shall not be compelled to give evidence against himself, or of the further guaranty 'that the people shall be secure in their persons, houses, papers, and possessions from unreasonable seizures or searches.' * * * However unfair or illegal may be the methods by which evidence may be obtained in a criminal case, if relevant, it is admissible, if the accused is not compelled to do any act which criminates himself, or a confession or admission is not extorted from him, or drawn from him by appliances to his hopes or fears."

The soundness of the construction reached in Shields' Case, supra, is challenged by the present appeal, and the insistence is made that the doctrine of stare decisis does not obtain in this state, and that under section 5965 of the Code of 1907 Shields' Case should be overruled and disregarded, if the rule announced in that case is unsound when measured by the language of the Constitution and the evident purposes sought to be obtained by its provisions.

This court has given a most serious and careful consideration to the question presented, and has reached the conclusion that the rule of evidence and procedure announced in the Shields Case, and followed by the later cases to which we have referred, is repugnant to and inconsistent with the plain objects and purposes sought to be obtained under the provisions of article 1, § 5, of the Constitution of Alabama. Said section of the Constitution expresses a plain, outspoken, honest guaranty that the people shall be secure in their persons, houses, papers, and possessions from unreasonable seizure or searches. The right sought to be maintained, preserved, and enforced by this constitutional guaranty is one that relates to a fundamental principle of government, for the supreme purpose actuating mankind in the organization of society was the preservation of life, liberty and property. The end sought to be obtained by this constitutional provision was to prevent all unlawful invasions of the sanctity of the home and the privacies of life. The right protected is the indefeasible right of personal security and personal liberty, and traces its existence to that conces-

sion of Magna Charta obtained on the battle-field of Runnymede by English freemen from John, their king, on the 15th day of June, 1215, and which guaranteed:

"No freeman may be taken, or imprisoned, or detained, or outlawed, or banished, or in any way destroyed, nor will we go against him, or send against him, except by the lawful judgment of his peers, or by the law of the land. To none will we sell or deny or delay right or justice."

The case of Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647, construing the Fourth and Fifth Amendments to the federal Constitution, which contains provisions in all respects identical to article 1, §§ 5 and 6, of the Constitution of this state, holds:

"It would not be possible to add to the emphasis with which the framers of our Constitution and this court (in Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, in Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, and in Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319), have declared the importance to political liberty and to the welfare of our country of the due observance of the rights guaranteed under the Constitution by these two amendments. The effect of the decisions cited is that such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty, and private property'; that they are to be regarded as of the very essence of constitutional liberty; and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen—the right to trial by jury, to the writ of habeas corpus, and to due process of law. It has been repeatedly decided that these amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by imperceptible practice of courts, or by well-intentioned, but mistakenly overzealous, executive officers."

Concisely stated, the conclusion reached in the Shields Case is that evidence obtained through and by means of a plain violation of of a constitutional prohibition is admissible, if said evidence is relevant to the issue of the case on trial. In other words, a rule of evidence, or of procedure, is declared by the Shields Case to be paramount to the Constitution itself. The fallacy of this doctrine is clearly and conclusively demonstrated by the Supreme Court of the United States in the case of Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319, in the following language:

"The government now, while in form repudiating and condemning the illegal seizure, seeks to maintain its right to avail itself of the knowledge obtained by that means, which otherwise it would not have had. The proposition could not be presented more nakedly. It is that although, of course, its seizure was an outrage which the government now regrets, it may study the papers before it returns them, copy them, and then may use the knowledge that it has gained to call upon the owners in a more regular form to produce them; that the protection of the Constitution covers the physical possession but not any advantages that the government can gain over the object of its pursuit by doing the forbidden act. Weeks v. U. S., 232 U. S. 383, to be sure had established that laying the papers direct before the grand jury was unwarranted, but it is taken to mean only that two steps are required instead of one. In our opinion such is not the law. It reduces the Fourth Amendment to a form of words. 232 U. S. 393. The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court, but that it shall not be used at all."

[1] The principle, therefore, that prevents the introduction of testimony obtained through a violation of the Constitution is that the Constitution itself prohibits the obtaining of evidence in this manner. There can be no higher authority for the exclusion of such evidence than the Constitution. The Constitution of Alabama is the supreme law of this state. To it all statutes, rules of evidence, rules of procedure, courts in the exercise of their power and authority, officials acting under the color of their office, as well as individuals, must pay their respect and obedience. It is the *supreme law*, and to it all rules of evidence, procedure, and expediency, in conflict with its mandates and prohibitions, must yield. Dorman v. State, 34 Ala. 216; Sadler v. Langham, 34 Ala. 311; Johnson v. Craft et al., 205 Ala. 386, 87 South. 375; Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; Bailey v. Alabama, 219 U. S. 219, 31 Sup. Ct. 145, 55 L. Ed. 191; Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319; Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647; Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654.

But, says the Shields Case:

"We adhere to the proposition, to be extracted from the authorities to which we have referred, that, however unfair or illegal may be the methods by which evidence may be obtained in a criminal case, if relevant, it is admissible, if the accused is not compelled to do any act which criminates himself, or a confession or admission is not extorted from him, or drawn from him by appliances to his hopes or fears."

The Constitution forbids that evidence may be obtained by virtue of an unreasonable search, and when the competency, legality, or admissibility of evidence is challenged upon the ground that it was obtained through the violation of a constitutional pro-

hibition, the method by which the evidence was obtained is the crucial test of its admissibility, for—

"The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court, but that it shall not be used at all." Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319.

The same principle was recognized and adhered to by the Supreme Court of Alabama in the case of Johnson v. Craft et al., 205 Ala. 386, 87 South. 375, where it was said:

"Now, as ever before, the penalty for the violation of the Constitution is that the product of the offense is a nullity."

The Constitution prohibits every officer from making an illegal search, and from intruding upon the privacy of the home without legal warrant, and from gaining access to one's premises by force or fraud. As was, said in the case of Sadler v. Langham, 34 Ala. 311, at page 329:

"Every officer in the government, from the executive to the humblest magistrate, is charged, to the extent of his sphere, with the preservation of constitutional rights."

What was said in the case of Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, applies with full force and emphasis to the question under consideration. In Weeks' Case, it was said:

"If letters and private documents can thus be seized, and held and used in evidence against a citizen accused of an offense, the protection of the Fourth Amendment, declaring his right to be secure against such searches and seizures, is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution. The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles, established by years of endeavor and suffering, which have resulted in their embodiment in the fundamental law of the land. The United States marshal could only have invaded the house of the accused when armed with a warrant issued as required by the Constitution, upon sworn information and describing with reasonable particularity the thing for which the search was to be made. Instead he acted without sanction of law, doubtless prompted by the desire to bring further proof to the aid of the government, and under color of his office undertook to make a seizure of private papers in direct violation of the constitutional prohibition against such action. Under such circumstances, without sworn information and particular description, not even an order of court would have justified such procedure; much less was it within the authority of the United States marshal to thus invade the house and privacy of the accused. In Adams v. New York, 192 U. S. 585,

this court said that the Fourth Amendment was intended to secure the citizen in person and property against unlawful invasion of the sanctity of his home by officers of the law acting under legislative or judicial sanction. This protection is equally extended to the action of the government and officers of the law acting under it. Boyd Case, supra. To sanction such proceedings would be to affirm by judicial decision a manifest neglect, if not an open defiance, of the prohibition of the Constitution, intended for the protection of the people against such unauthorized action."

And again in the same case it was said:

"The effect of the Fourth Amendment is to put the courts of the United States and federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers, and effects, against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all intrusted under our federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the federal Constitution, should find no sanction in the judgments of the courts, which are charged at all times with the support of the Constitution, and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights."

This doctrine was later followed in the case of Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654, in the application of the rule to a case involving contraband liquors. In the case of Johnson v. Craft et al., 205 Ala. 386, 393, 87 South. 375, at page 380, which is one of the latest expressions of the Supreme Court upon the question, it was said:

"The Constitution of Alabama, like that of the nation and of the other states, is the supreme law within the realm and sphere of its authority. Subject only to the restraints resulting from the Constitution of the United States, the Constitution of Alabama is the highest form and expression of law that exists in this state. The source of its creation and the character of its sanction, viz. the people's deliberate will, invests the Constitution with its paramount quality. The Constitution's control is absolute wherever and to whatever its provisions apply; and every officer, executive, legislative, and judicial, is bound by oath (section 279) to support the Constitution, to vindicate and uphold its mandates, and to observe and enforce its inhibitions without regard to extrinsic circumstances. It commits to no body, officer, or agent any authority or power whatever to change or modify or suspend the effect or operation of its mandates or its prohibitions."

And again in the same case, upon application for a rehearing, it was said:

"The Constitution contains no idle assertions, no meaningless language, no ephemeral purpose, no recognition of the right of even all the people—except through revolution and attendant anarchy—or of the Legislature, or of the courts to refuse obedience to its supreme authority, or by evasion or subterfuge to defeat the Constitution as the highest expression of the people's will."

The power to forgive, condone, or heal the violation of plain, unambiguous mandates, prohibitions, or limitations of the Constitution is denied to the courts and judges of this state, although such violation may result in the greatest good, or may promote a universal benefaction. To say that a sheriff of this state may invade the privacy of the home of one of its' citizens, without search warrant or other legal process, and thus procure testimony that may be used to secure the conviction to such citizen of a criminal offense, would be to affirm and sanction, by judicial decision, an open defiance of the prohibitions of the Constitution designed and promulgated for the protection of each and every citizen of the state against such unauthorized, illegal, and outrageous action. If one constitutional provision may be nullified in this manner, then why not all? To indorse, countenance, and sanction the invasion of the home of a citizen of this state by a sheriff of this state without proper process is in its last analysis to indorse anarchy and revolution.

For the reasons set forth, it is the unanimous opinion of the Court of Appeals that the case of Shields v. State, 104 Ala. 35, 16 South. 85, 53 Am. St. Rep. 17, and all cases following it, should be overruled and held for naught in so far as said cases may vitalize and give effect to a plain violation of the prohibitions against unreasonable searches and against self-incrimination, as provided under article 1, sections 5 and 6, of the Constitution of Alabama.

It is further the judgment of the Court of Appeals that the importance of the subject-matter presented by this appeal is of such magnitude and grave concern to all of the people of this state as to justify this court in presenting by a proper certification to the Supreme Court the constitutional question herein involved, to the end that the Supreme Court may be given the opportunity of reviewing its own cases upon the question, and of pronouncing its judgment as to whether or not the Shields Case, supra, and the other cases following it, shall be overruled.

### Certificate to the Supreme Court.

Under the provisions of the statute (Acts 1911, p. 449, § 1) approved April 18, 1911, the following questions are hereby submitted to the Supreme Court for determination:

(1) Is evidence obtained by the unreasonable search of the dwelling house and appurtenant premises of a citizen of this state admissible against such citizen on the trial, in a criminal prosecution growing out of such unreasonable search, when said citizen objects to such evidence upon the ground that it was obtained by a violation of his constitutional rights as set out and contained in sections 5 and 6, respectively, of article 1 of the Constitution of Alabama?

(2) Is the rule of evidence established in the case of Shields v. State, 104 Ala. 35, 16 South. 85, 53 Am. St. Rep. 17, and followed by the cases of Pope v. State, 168 Ala. 33, 53 South. 292, and Robertson v. City of Montgomery, 201 Ala. 198, 77 South. 724, in conflict with the terms and provisions of the Fourteenth Amendment to the Constitution of the United States?

The appellant insists that, if the Shields Case, supra, is permitted to stand, and evidence obtained through a violation of the constitutional provision against unreasonable search is admitted over the objection and exception of a defendant, then in effect a state will be permitted to enforce a law which abridges the privileges and immunities of citizens of the United States, and a state will be permitted to deprive a person of his liberty without due process of law, because Gouled's Case, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647, says that the right declared by section 5, article 1, of the Constitution is "indispensable to the 'full enjoyment of personal security, personal liberty and private property.' " and is "to be regarded as of the very essence of constitutional liberty, and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen—the right to trial by jury, to the writ of habeas' corpus, and to due process of law."

C. R. BRICKEN,
Presiding Judge.
WM. H. SAMFORD,
H. P. MERRITT,
Associate Judges.

### Response of Supreme Court to Certified Questions.

THOMAS, J. Mr. Freeman classifies the rules for the introduction of evidence into groups: (1) Those based upon the probative value of the evidentiary fact being considered; (2) those designed to improve the quality of the proof dependent upon such fact, "strengthening the probability of success in the ascertainment of the truth of the matter"; (3) those "which limit and restrict the search after truth"—and accepted them as "less harmful to the ulterior interests of society at large than would be the

failure of such investigation, if success cannot be attained without jeopardizing those interests."

It is the application of rules within the third group, wherein artificial tests, not based upon its probative value, are applied —as the "manner in which" evidence is obtained. Illustrations of material evidence wrongfully obtained admitted on criminal trials are to be found in the decisions of many of the states.

"The cases mention evidence obtained 'by unlawful, improper, reprehensible, and even criminal search and seizure,' 'search and seizure without a warrant,' 'by illegal and unauthorized search,' 'search and seizure without color of authority,' 'by strategy and fraud,' 'by forcible search,' 'by the commission of a trespass,' 'by means of a warrant illegally issued and executed,' and many other similar modes. Evidence appears to have been wrongfully obtained in the following cases: In Pope v. State (Ala.) 53 South. 292, shoes were taken from the defendant's premises upon a search without a warrant; in People v. Le Doux, 155 Cal. 535, 102 Pac. 517, letters of an incriminating character were taken from defendant's house by a search without color of legal authority; in People v. Warrant, 12 Cal. App. 730, 108 Pac. 725, a letter written by the accused while in jail, tending strongly to prove guilt, was procured by strategy and fraud; in Williams v. State, 100 Ga. 511, 28 S. E. 624, 39 L. R. A. 269, marked coins of an incriminating character were taken from the defendant, before being formally charged, and before actual knowledge of the commission of a public offense was in the possession of the officer, by forcibly searching her without a warrant; * * * in Tooke v. State, 4 Ga. App. 495, 61 S. E. 917, Rogers v. State, 4 Ga. App. 691, 62 S. E. 96, Taylor v. State, 5 Ga. App. 237, 62 S. E. 1048, and Warren v. State, 6 Ga. App. 18, 64 S. E. 111, evidence was obtained by an illegal search and seizure; in Cohen v. State, 7 Ga. App. 5, 65 S. E. 1096, by a search of defendant's premises under a warrant illegally issued; in Gindrat v. People, 138 Ill. 103, 27 N. E. 1085, by a search characterized by the court as unlawful, improper, reprehensible, and even criminal, being obtained by a private detective in a search, without warrant, of defendant's premises; in State v. Aspara, 113 La. 940, 37 South. 883, the clothing of defendant, worn at the time of the commission of the homicide charged, was illegally taken from him without a warrant. These cases might be multiplied almost indefinitely, but the above will serve to illustrate the various methods by which evidence may be secured in violation of the legal rights of accused persons." 136 Am. St. Rep. 136.

To the foregoing may be added the several cases from this court of Shields v. State, supra; Scott v. State, 113 Ala. 64, 21 South. 425 (unlawful search); French v. State, 94 Ala. 93, 10 South. 553 (lawful arrest); Scott v. State, 94 Ala. 80, 10 South. 505 (unlawful arrest); Chastang v. State, 83 Ala. 29, 3 South. 304 (under legal arrest); Sewell v. State, 99 Ala. 183, 13 South. 555 (lawful ar-

rest); Berney v. State, 69 Ala. 233 (cause of arrest held irrelevant)—where the "unauthorized" search of defendants resulted in the discovery of a pistol unlawfully concealed about the person; Ex parte Hurn, 92 Ala. 102, 112, 19 South. 515, 13 L. R. A. 120, 25 Am. St. Rep. 23, where the prisoner was under arrest on a criminal charge and, being searched by the arresting officer, money was taken from his person. These last were cases under the Constitution of 1875. In Edmunds v. State, 199 Ala. 555, 560, 74 South. 965, contraband liquors seized without a search warrant describing the premises were condemned; Robertson v. City of Montgomery, supra; Ex parte Edmunds, 203 Ala. 349, 83 South. 93; Martin v. State, 1 Ala. App. 215, 56 South. 3; L. R. A. 1915B, 836, note; Bell v. State, 16 Ala. App. 36, 75 South. 181, where contraband liquors were obtained by an illegal or unauthorized search of premises of defendant; under Constitution of 1901, held that evidence so obtained was admissible against the defendant on prosecution for the criminal act of unlawful possession of same.

Our Shields v. State, supra, is a leading case throughout the several states, and we may observe of the facts on which that decision rested that no offense had been charged against the defendant, who sought to visit a kinsman in jail, and was halted by the sheriff and informed that he must submit to a search of his person before he would be permitted to enter. Against his consent the sheriff searched his person and seized a weapon concealed thereon. Responding to the insistence that evidence so obtained was privileged under the constitutional guaranties, this court observed that not infrequently evidence is obtained by reprehensible methods—

"offensive to fair dealing, subjecting it to unfavorable inferences, the party relying upon it must neutralize, to entitle it to full credence. And evidence is sometimes obtained under circumstances which meet with the unqualified disapprobation of the courts. The evidence, however unfairly and illegally obtained, is not subject to exclusion, if it be of facts in themselves relevant. * * * While it is true the search of the defendant was without legal justification, a trespass, and an indictable misdemeanor, we know of no principle or theory upon which the state may be deprived of the right to employ the evidence of a criminal offense thus obtained."

This doctrine has been accepted in America, and cases supporting it are to be found in almost every state of the Union. Weeks v. U. S., 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, 37 Ann. Cas. 1915C, 1177, 1183; 40 Cyc. 867, d; 16 C. J. p. 570, § 1110; 8 R. C. L. pp. 194–197; 10 R. C. L. pp. 931–934; State v. Turner, 82 Kan. 787, 109 Pac. 654, 32 L. R. A. (N. S.) 772; L. R. A. 1918B, 849; 29 L. R. A. 811, note;

L. R. A. 1915B, 834; 34 L. R. A. (N. S.) 58; 59 L. R. A. 465; 53 Am. St. Rep. 17, 23; People v. Adams, 176 N. Y. 351, 68 N. E. 636, 98 Am. St. Rep. 675 et seq.; 94 Am. St. Rep. 345; 63 L. R. A. 406; Bacon v. U. S., 97 Fed. 35, 40, 38 C. C. A. 37; 8 L. R. A. (N. S.) 762; L. R. A. 1916E, 716. This was the rule of the common law. 1 Greenl. Ev. (15th Ed.) § 254a; Dr. Atterbury's Trial, 16 How. St. Trials (1723) 323, 495, 629; Freeman's notes to State v. Turner, 82 Kan. 787, 109 Pac. 654, in 136 Am. St. Rep. 129.

The reasoning on which the rule rests is said to be that the court, when engaged in the trial of a criminal action, "will not take notice of the manner in which a witness has possessed himself of papers or other chattels, subjects of evidence, which are material and properly offered in evidence" (People v. Adams, 176 N. Y. 351, 68 N. E. 636, 98 Am. St. Rep. 675, 63 L. R. A. 406); to pursue such inquiry would halt the orderly progress of a cause in the consideration of an incidental question, which has crossed the path of such litigation and "wholly independent" thereof. This is the view of the text-writers. 3 Wigm. on Ev. §§ 2183, 2184; 1 Greenl. on Ev. § 254a; 5 Jones on Ev. § 884; 9 Ann. Cas. 655; 8 L. R. A. (N. S.) 762; 59 L. R. A. 465. Mr. Freeman, approving foregoing reasons, says:

"Others might be advanced, having their roots in the principles of logic, and based upon the nature and properties of evidence and its purposes; * * * that the object of evidence is to elicit truth, and it can never be said that the probative value of any evidentiary fact is affected in the smallest particular by the manner or the means whereby the fact itself was obtained." 136 Am. St. Rep. 142.

[2] This ancient rule of law, so well stated by Judge Brickell (Shields v. State, supra), has obtained among English-speaking people for 200 years, since the trial of Bishop Atterbury in 1723 (16 How. St. Tr. 323). With this construction by our court of sections 6 and 7 of article 1 of the Constitution of 1875, the same was reordained in the Constitution of 1901 as sections 5 and 6, with the additional provision in section 6 that the accused has the right "to testify in all cases, in his own behalf, if he elects so to do." Ex parte Pepper, 185 Ala. 284, 294, 64 South. 112; Taylor v. Woods, 52 Ala. 474; authorities collected in Johnson v. Craft, 205 Ala. 386, 87 South. 375, 395. The reordaining, or substantial reproduction, of a provision of the organic (or statutory) law operates its adoption with the settled construction which the judiciary has placed upon it. Ex parte Pepper, supra; T. C. I. & R. R. Co. v. Roussell, 155 Ala. 435, 46 South. 866, 130 Am. St. Rep. 56; Wood, etc., Co. v. Cocciola, 153 Ala. 555, 45 South. 192; Taylor v. State, 131 Ala. 36, 31 South. 371; Morrison v. Stevenson, 69 Ala. 448.

[3] The uniform construction of sections 6 and 7 as a part of the organic law of this state in 1875, and of sections 5 and 6 of 1901 is answer to the first inquiry propounded by the Court of Appeals; that is to say, the evidence being, as presented in Judge BRICKEN'S opinion, that the sheriff or deputy sheriff of the county, without any search warrant and without any legal justification or excuse, searched the dwelling house and appurtenant premises of appellant, and there found a still or appliance which each of said officers testified was suitable and adapted to the distillation of prohibited liquors—beer being made ready for distillation into whisky or other prohibited liquors or beverages. The question of the competency of such evidence, raised on the trial of defendant by her objection "to the appearance of each of said witnesses and to any testimony that might be elicited from them, or either of them, upon the grounds that said testimony was procured by said witnesses through an illegal and unwarranted search of her dwelling house and appurtenant premises," was properly adjudged in favor of the state. The Constitution of the United States contains amendments providing that:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." Article 4.

And that:

"No person shall be held to answer for a capital, or other infamous crime; * * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law. * * *" Article 5.

With commendable frankness appellant's counsel said:

"I am not contending, nor do I insist, that articles 4 and 5 of the Amendments to the federal Constitution were intended to limit the powers of a state government with respect to its own people. I am not contending * * * that the federal Constitution has any power or control whatever over rules of evidence as regulated by the laws of this state, where said rules of evidence do not violate some provision of the federal Constitution applicable to the states."

[4] This concession is warranted by the long line of authorities cited in Spies v. Illinois, 123 U. S. 131, 166, 8 Sup. Ct. 21, 24, 31 L. Ed. 80, where Mr. Chief Justice Waite said:

"That the first ten articles of amendment were not intended to limit the powers of the

state governments in respect to their own people, but to operate on the national government alone, was decided more than a half century ago, and that decision has been steadily adhered to since. Barron v. Baltimore, 7 Pet. 243, 247. * * *"

There has been uniform adherence to that rule by the Supreme Court of the United States. Ex parte Sawyer, 124 U. S. 200, 8 Sup. Ct. 482, 31 L. Ed. 402; O'Neil v. State of Vt., 144 U. S. 323, 12 Sup. Ct. 693, 36 L. Ed. 450; Thorington v. Montgomery, 147 U. S. 490, 13 Sup. Ct. 394, 37 L. Ed. 252; Miller v. State of Texas, 153 U. S. 535, 14 Sup. Ct. 874, 38 L. Ed. 812; Brown v. New Jersey, 175 U. S. 172, 20 Sup. Ct. 77, 44 L. Ed. 119; Maxwell v. Dow, 176 U. S. 581, 20 Sup. Ct. 448, 494, 44 L. Ed. 597; West v. Lousiana, 194 U. S. 258, 24 Sup. Ct. 650, 48 L. Ed. 965; Jack v. Kansas, 199 U. S. 372, 26 Sup. Ct. 73, 50 L. Ed. 234, 4 Ann. Cas. 689; Ughbanks v. Armstrong, 208 U. S. 481, 28 Sup. Ct. 372, 52 L. Ed. 582; Twining v. New Jersey, 211 U. S. 78, 29 Sup. Ct. 14, 53 L. Ed. 103; Ensign v. Penn., 227 U. S. 592, 33 Sup. Ct. 321, 57 L. Ed. 658; 35 L. R. A. 578, notes—"V. Extent of United States Constitution."

Not only is the pertinent provision of the Fifth Amendment to the Constitution of the United States—that no person shall be compelled in a criminal case to be a witness against himself—strictly a restraint upon the power of the federal government and without application to the states (State v. Brennan, 2 S. D. 384, 50 N. W. 625; State v. Atkinson, 40 S. C. 363, 42 Am. St. Rep. 877;[1] In re Briggs, 135 N. C. 118, 47 S. E. 403; State v. Comer, 157 Ind. 611, 62 N. E. 452; Reed v. Rice, 2 Marsh. [Ky.] 44, 19 Am. Dec. 122; Weimer v. Bunbury, 30 Mich. 201), but the inhibition found in the Fourth Amendment is likewise a limitation upon the power of the federal government to make unreasonable searches and seizures for its own benefit, and has no reference to unauthorized acts of individuals, though they may be officials of the state (Weeks v. U. S., supra; Twining v. New Jersey, supra; Bacon v. U. S., 97 Fed. 35, 40, 38 C. C. A. 37; Gindrat v. People, 138 Ill. 103, 27 N. E. 1085; Comm. v. Dana, 2 Metc. [Mass.] 329, 337; State v. Flynn, 36 N. H. 64). It will be observed that Mr. Chief Justice Brickell stated specifically in Shields v. State, supra, that "the state had no connection with and had no agency in the wrong committed by the sheriff": that is to say, in the exercise of governmental power did not commit the wrong, and pointed thus to the method of redress:

"The law appoints the remedy for the redress of the wrong, but the exclusion of the evidence criminating the defendant is not within the scope of the remedy, or the measure of redress."

In State v. Fuller, 34 Mont. 12, 85 Pac. 369, 8 L. R. A. (N. S.) 762, it is declared that the privilege of the Constitution against self-crimination is—

"a statement of the common-law rule of evidence, and guarantees no greater privilege than that all persons [parties or witnesses], * * * shall be free from compulsion by legal process, to give self-incriminating testimony." Shields v. State, supra; Wigm. Ev. § 2183 et seq.; Twining v. New Jersey, supra; 2 Story, Const. § 1788.

This privilege, broadly stated by text-writers, is that:

"An accused person cannot be compelled by process directed to him as a witness to furnish evidence against himself, either in the form of oral statements which he is coerced into making, or in that of papers or chattels of any description capable of being made the subject of evidence, which he has the right to hold secret, in the production of which he coerced into doing some positive, overt act."

Mr. Freeman adds, "Beyond this, the privilege does not extend;" and it must be produced under compulsion, the degree of which "robs the accused of volition" (Barton v. State, 4 Ga. App. 649, 62 S. E. 99), and amounts to "testimonial compulsion" (Wigm. Ev. § 2263, p. 3123).

In Moss v. State, 146 Ala. 686, 40 South. 340, the accused person was requested without threats or inducement, not required, to take off his shoes for inspection, and he offered no objection. Held, admissible. Lee v. State, 69 Fla. 255, 67 South. 883, Ann. Cas. 1917D, 236. In Terry v. State, 90 Ala. 635, 8 South. 664, though there was no evidence showing that defendant was liable to arrest or had committed crime prior to his arrest, it was shown that he "requested said deputy to take him into a room and take his pistol and knife." So of the comparison of footprints with the feet of the accused; he cannot be required by "legal process to assist against his will in making such comparison without violating his constitutional privilege against self-crimination," though his shoes may be taken by others and compared with tracks, at or near the place of the commission of the crime. Cooper v. State, 86 Ala. 610, 6 South. 110, 4 L. R. A. 766, 11 Am. St. Rep. 84; Chastang v. State, supra; Spicer v. State, 69 Ala. 159; Morris v. State, 124 Ala. 44, 27 South. 336.

Where, however, a defendant has testified on the trial for the crime or offense, and has objected to being required "to rise and come round in front and face the jury for their inspection," on the ground that this requirement by the court was a violation of the constitutional provision against self-crimination, Mr. Justice Head observed of the right of the accused under section 7, article 1, Constitution 1875, that:

"If defendant had not voluntarily made herself a witness in the cause, * * * the action of the court would have been an invasion of the

[1] 18 S. E. 1021.

constitutional immunity * * * referred to," Williams v. State, 98 Ala. 52, 13 South. 333; Cooper v. State, supra; Clarke v. State, 78 Ala. 474, 480, 56 Am. Rep. 45.

Such pronouncements of the extent of the constitutional privilege would not prevent some person, be he not a state official or agent, from taking the shoes from the possession of the accused, and with or without his consent, make comparisons with footprints, and testify to the result of such comparison; the distinction being the accused is not required to "do any positive act in connection therewith." Davis v. State, 131 Ala. 10, 31 South. 569; Chastang v. State, supra; Cooper v. State, supra; Potter v. State, 92 Ala. 37, 9 South. 402; Pate v. State, 150 Ala. 10, 18, 43 South. 343; Williams v. State, supra; 12 Cyc. 400, 402.

[5] It must be noted in this connection that compulsion of self-crimination (denied by the Constitution) must be directed to the accused person in the capacity of a witness— must be strictly testimonial. Spicer v. State, 69 Ala. 159. It must be directed to a positive act on the part of the accused person, independent and involuntary, and does not include the independent acts of extraneous persons. Such was the effect of State v. Flynn, supra, Gindrat v. People, supra, and Comm. v. Dana, supra, on which our cases are rested.

In the case of Gindrat v. People, it was held that constitutional privileges, whether national or state, prohibiting the enforced production by the parties in a criminal case of evidence against themselves are merely limitations upon the powers of the government, and have no reference whatever to, or bearing upon, unauthorized acts of individuals, as to render inadmissible such damaging evidence so obtained in a prosecution for a criminal offense. In that case a private detective secured damaging evidence by an enforced search of defendant's room. In the Flynn Case, supra, it was said to be an unfounded idea that the damaging discoveries made by state officers, in the execution of process, or where they intrude upon a man's privacy without a legal warrant, are the admissions of the party or evidence given by him. If the accused has in his possession certain "mute witnesses," which he endeavors to keep concealed, when revealed by force or fraud, the evidence thus obtained is not that of the accused, but that of the persons gaining access to defendant's place of concealment. The Justice says:

"It does not seem to us possible to establish a sound distinction between that case, and the case of the counterfeit bills, the forger's implements, the false keys, or the like, which have been obtained by similar means. The evidence is in no sense his [the accused's]."

In Commonwealth v. Dana, supra, the Justice said:

"Admitting that the lottery tickets and materials were illegally seized, still this is no legal objection to the admission of them in evidence. If the search warrant were illegal, or if the officer serving the warrant exceeded his authority, the party on whose complaint the warrant issued, or the officer, would be responsible for the wrong done; but this is no good reason for excluding the papers seized as evidence, if they were pertinent to the issue, as they unquestionably were."

Said Judge Brickell in Shields v. State, supra:

"The defendant made no admission or confession; he was passive, the unresisting victim of unlawful violence; and if he had made an admission or confession, its exclusion, because not free and voluntary, would have been unavoidable. It is not that which he has said or done, which is supposed to offend the constitutional guaranty, but the independent, unlawful acts of the sheriff, by and through which it was discovered that he bore upon his person the 'mute witness' of a criminal offense."

An analogy to this is found in "voluntary confessions" that are obtained by false statements that did not amount to fear of punishment or the hope of reward (Curry v. State, 203 Ala. 239, 82 South. 489, King v. State, 40 Ala. 314, and Levison v. State, 54 Ala. 520), or of "voluntary confessions" obtained by propounding questions to the accused which assume guilt (White v. State, 133 Ala. 122, 32 South. 139; Carroll v. State, 23 Ala. 28, 58 Am. Dec. 282), and in "voluntary confessions" obtained by statements made in the form of a collateral benefit that offered no hope of favor in the charge against him (McKinney v. State, 134 Ala. 134, 32 South. 726; Stone v. State, 105 Ala. 60, 17 South. 114; McIntosh v. State, 52 Ala. 355).

We are satisfied with the construction of sections 6 and 7 of the Constitution of 1875 (sections 5, 6, Const. 1901), made to the facts on which rested the decision in Shields v. State, supra, and other cases following the rule there announced. The ancient rule of securing to the people immunity against unreasonable searches and seizures was adverted to by Mr. Justice Gardner in State Tax Comm. v. T. C. I. Co., 206 Ala. 355, 89 South. 179, where some early history of the rule was given. Entick, Clerk, v. Carrington and Three Other Messengers in Ordinary to the King, 19 How. St. Tr. 1029. Back of this, at the trial of Bishop Atterbury, supra, the first announcement of the rule was made. The Bishop's correspondence, surreptitiously obtained, was used as evidence against him in his impeachment. This discussion is foreclosed by the line of federal decisions, to the effect that articles 4 and 5 of Amendments to the Constitution of the United States were not limitations upon the power of state governments in respect of their own people or citizens, and operated only on the national government.

It may be interesting to note the constructions placed by the Supreme Court of the United States on the Fourth and Fifth Amendments in Weeks v. U. S., supra; Silverthorne Lbr. Co. v. U. S., 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319; Gouled v. U. S., 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647; Amos v. U. S., 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654. These cases are not controlling on state courts. In each of said cases the federal government was the actor, as was the state of Alabama in construing and enforcing its statute by the application of its rules of procedure and evidence, involved in inducing the instant ruling of which complaint is now made. Ex parte Virginia, 100 U. S. 339, 25 L. Ed. 676; Scott v. McNeal, 154 U. S. 34, 14 Sup. Ct. 1108, 38 L. Ed. 896; Chicago, etc., Co. v. Chicago, 166 U. S. 226, 17 Sup. Ct. 581, 41 L. Ed. 979; Twining v. New Jersey, supra.

The case of Weeks v. U. S., supra, held that protection against individual misconduct of certain of the municipal officers of Kansas City, Mo., in the seizures of defendant's letters and documents (not acting under any claim of federal authority), is not afforded by the guaranty of the Fourth Amendment to the Constitution of the United States, and that immunity only extended to the acts of the United States marshal in the unreasonable search and seizure of defendant's said letters and private documents, within the inhibition of the federal Constitution. Mr. Justice Day said:

"As to the papers and property seized by the policemen, it does not appear that they acted under any claim of federal authority such as would make the amendment applicable to such unauthorized seizures. The record shows that what they did by way of arrest and search and seizure was done before the finding of the indictment in the federal court, under what supposed right or authority does not appear. What remedies the defendant may have against them we need not inquire, as the Fourth Amendment is not directed to individual misconduct of such officials" of the state and municipality.

In Silverthorne Lbr. Co. v. U. S., supra, Mr. Justice Holmes observed:

"If knowledge of them [the papers taken by government officials] is gained from an independent source they may be proved like any others, but the knowledge gained by the government's own wrong cannot be used by it in the way proposed"—the unreasonable search and seizure having been made by representatives of the Department of Justice.

The holding was that the numerous decisions like Adams v. N. Y., 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575, to the effect that a collateral inquiry into the mode in which evidence has been received will not be allowed (as against the acts of the government, we interpolate) at the trial, were no authority in that proceeding, where the unlawful search and seizure was by federal authority or agents and the prosecution is had in a federal court. This decision is cited on the authority of the Weeks Case, supra.

The Silverthorne decision was in the matter of contempt of court for refusal to obey subpœnas and an order of the court to produce books and documents of the company before the grand jury of the United States, to be used in regard to an alleged violation of the statutes of the United States by Silverthorne and his father.

In Gouled v. United States, supra, on a certificate from the United States Circuit Court of Appeals, where defendant, one Vaughn, and another, were charged (in the courts of the United States) with conspiracy to defraud the United States, one Cohen, a private in the army, attached to the Intelligence Department, and a business acquaintance of Gouled, "under direction of his superior officers, pretending to make a friendly call upon the defendant, gained admission to his office, and in his absence, without warrant of any character, seized and carried away several documents" of the defendant Gouled. The trial court overruled defendant's objections to the introduction in evidence of said papers and documents on the ground (it was inferred) that they were obtained without the use of force or illegal coercion, or because the objection came too late. The holding by Mr. Justice Clarke was that the prohibition of the Fourth Amendment is against all unreasonable searches and seizures by the government of the United States, its officers, officials, or agents, and if a government officer were to obtain entrance to a man's house or office by force or an illegal threat, or show force, amounting to coercion, and then search for and seize his private papers, this would be an unreasonable, and therefore a prohibited, search and seizure; that it "is impossible to successfully contend that a like search and seizure would be a reasonable one, if only admission were obtained by stealth, instead of force or coercion." The Justice concludes the opinion with the observation:

"It is plain that the trial court acted upon the rule, widely adopted, that courts in criminal trials will not pause to determine how the possession of evidence tendered has been obtained. While this is a rule of great practical importance, yet, after all, it is only a rule of procedure, and therefore it is not to be applied as a hard and fast formula to every case, regardless of its special circumstances. We think rather that it is a rule to be used to secure the ends of justice under the circumstances presented by each case; and where, in the progress of a trial, it becomes probable that there has been an unconstitutional seizure of papers, it is the duty of the trial court to entertain an objection to their admission, or a motion for their exclusion, and consider and decide the question as then presented, even where a motion to return the papers may have been de-

nied before trial. A rule of practice must not be allowed for any technical reason to prevail over a constitutional right."

This announcement must be taken with the other announcements of the Supreme Court of the United States, limiting the effect of the field of operation of the Fourth and Fifth Amendments to the federal government and its agents, and not bringing within the operation of these amendments a rule of practice and procedure by the state court in its due and orderly administration of the laws of the state.

The case of Amos v. U. S., supra, was in error to the District Court of the United States for the Eastern District of South Carolina, to review a conviction in the federal court for violation of federal internal revenue laws. Before the evidence was offered, defendant Amos petitioned the court to require the return of private property described, which, it was averred, the district attorney intended to use in evidence at his trial in the federal court, and which had been unlawfully seized by officers of the government in the unlawful search of defendant's house, and contrary to the provisions of the Fourth and Fifth Amendments. The petition being denied, the designated officers were permitted, against due objection, to testify that they went to defendant's home in his absence, gained an entrance, searched the premises, and found prohibited liquors there kept or stored contrary to federal statutes. The decision was rested on Gouled v. U. S., supra, and held that the constitutional rights of the defendant were not "waived when his wife admitted to his home the government officers, who came, without warrant, demanding admission to make search of it under government authority."

Nothing is contained in such recent authorities, or in the other decisions of the Supreme Court of the United States, that controlled the state court at the time of the trial of defendant for an offense against state law, or so changed the declared field of operation of the Fourth and Fifth Amendments to the federal Constitution, as to render nugatory or inapplicable the rule of the Shields Case. Answering, categorically, the first question submitted by the Court of Appeals, we are content with the construction given our Constitution in Shields v. State, supra, and are of the opinion that no constitutional right of the defendant as a citizen of the state, or under the Fourth and Fifth Amendments to the federal Constitution, has been violated in the admission of the testimony in question.

[6] The second inquiry, as to whether the ruling was offensive to provisions of the Fourteenth Amendment, is touched upon by Mr. Justice White in L. & N. v. Schmidt, 177 U. S. 230, 20 Sup. Ct. 620, 44 L. Ed. 750, where he said:

"It is no longer open to contention that the due process clause of the Fourteenth Amendment to the Constitution of the United States does not control mere forms of procedure in state courts or regulate practice therein. All its requirements are complied with, provided, in the proceedings which are claimed not to have been due process of law, the person condemned has had sufficient notice and adequate opportunity has been afforded him to defend." Ex parte Woodward, 181 Ala. 97, 61 South. 295; 12 C. J., section 979, p. 1205; Iowa, etc., Co. v. Iowa, 160 U. S. 389, 16 Sup. Ct. 344, 40 L. Ed. 467; Wilson v. North Carolina, 169 U. S. 586, 18 Sup. Ct. 435, 42 L. Ed. 865.

This second inquiry is more properly answered in Twining v. New Jersey, supra. Mr. Justice Moody there pointed to the fact that prior to the formation of the Constitution of the United States in which the exemption from compulsory self-crimination was secured by amendment, independently, and side by side with the requirement of due process, the doctrine (freedom from self-crimination) was formed, as other doctrines of the law of evidence have been formed, "by the course of decision in the courts, covering a long period of time," and that it was not then thought to be other "than a just and useful principle of law." He further states that the immunity was not contained in the "great instruments"—in the declaration of the fundamental rights—was not dreamed of for many years after the Magna Charta (1215), and its phrase of the "law of the land"; nor by the Petition of Right in 1629; nor was the inhibition contained in the Bill of Rights (1689) of the first year of the reign of William and Mary, at which time "the practice of questioning the prisoner at his trial" had not ceased; nor was it contained in the Declarations of Rights of the Stamp Act of Congress (1765), nor the Declaration of Rights of the Continental Congress (1774), nor the Ordinance for the Government of the Northwestern Territory. Of this exemption (from self-crimination) Mr. Justice Moody said further that though secured, as against federal action, by the Fifth Amendment to the Constitution of the United States, it is not one of the fundamental rights of national citizenship, included among the privileges and immunities of citizens of the United States, which the states are forbidden to abridge by the Fourteenth Amendment, but is of the "class of rights which the state governments were created to establish and secure."

The Twining Case is directly in point, since it was in error to the Court of Errors and Appeals of the state, to review a judgment which affirmed a judgment of the Supreme Court of that state, affirming a conviction of petitioner in the court of quarter sessions of that state, for having knowingly exhibited a false paper to a bank examiner with intent to deceive, and for which an indictment had been returned by the grand ju-

ry of Monmouth county of same state. The history of the first eight articles of amendment to the Constitution of the United States, and their relation to the federal and state governments, were reviewed, the leading cases of self-crimination and of due process of law considered, illustrations of the rights and privileges of national citizenship, as contradistinguished from the "class of rights which the state governments were created to establish and secure," given; the declaration of the privileges and immunities of citizens of the United States made, as being only such as arise out of the essential character of the national government or specifically granted or secured to all persons or citizens by the Constitution of the United States dealing with the question in hand, and considered were the Slaughter House Cases, 16 Wall. 36, 21 L. Ed. 394; Maxwell v. Dow, 176 U. S. 581, 20 Sup. Ct. 448, 494, 44 L. Ed. 597; U. S. v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588; Re Kemmler, 136 U. S. 436, 10 Sup. Ct. 930, 34 L. Ed. 519; Duncan v. Missouri, 152 U. S. 377, 14 Sup. Ct. 570, 38 L. Ed. 485; Hodges v. U. S., 203 U. S. 1, 27 Sup. Ct. 6, 51 L. Ed. 65; Hurtado v. California, 110 U. S. 516, 4 Sup. Ct. 292, 28 L. Ed. 232; West v. Louisiana, supra; Ohio v. Dollison, 194 U. S. 445, 24 Sup. Ct. 703, 48 L. Ed. 1062. See Baader v. State, 201 Ala. 76, 77 South. 370. Mr. Justice Moody, accepting the distinction of the two classes of citizenship declared in the Slaughter House Cases, said that:

"If, then, it be assumed, without deciding the point, that an exemption from compulsory self-incrimination is what is described as a fundamental right belonging to all who live under a free government, and incapable of impairment by legislation or judicial decision, it is, so far as the states are concerned, a fundamental right inherent in state citizenship, and *is a privilege or immunity of that citizenship only*. Privileges and immunities of citizens of the United States, on the other hand, are only such as arise out of the nature and essential character of the national government, or are specifically granted or secured to all citizens or persons by the Constitution of the United States," and "the inference is irresistible that it has been the opinion of Constitution makers that the privilege, if fundamental in any sense, is not fundamental in due process of law, nor an essential part of it,"

—that exemption by the Fifth Amendment is not of the fundamental rights of national citizenship, and that it is not brought within the provision of the Fourteenth Amendment that no state shall deprive any person of life, liberty, or property without due process of law.

The Twining Case is cited with approval in the conclusion of the decision in Weeks v. U. S., supra, where the observation is made:

"What remedies the defendant may have against them [the police officers of Kansas City, Mo.] we need not inquire, as the Fourth Amendment is not directed to individual misconduct of such officials. Its limitations reach the federal government and its agencies. Boyd Case, 116 U. S. 616, 29 L. Ed. 746, 6 Sup. Ct. Rep. 524. And see Twining v. New Jersey; * * *" Wilson v. New, 243 U. S. 332, 37 Sup. Ct. 298, 61 L. Ed. 755, L. R. A. 1917E, 938, Ann. Cas. 1918A, 1024.

The discussions by Mr. Justice Moody of the first eight articles of amendment to the Constitution of the United States, and in particular Articles 5 and 14, of the difference between the rights of citizenship guaranteed under the Constitution of the United States and the class of rights which the state governments were created to establish and secure, would induce a like conclusion as to articles 4 and 14 of Amendments. National Safe Deposit Co. v. Stead, Atty. Gen. of Ill., Russell, Treas. of Ill., and Lincoln, Inheritance Tax Atty., 232 U. S. 58, 71, 34 Sup. Ct. 209, 58 L. Ed. 504, 511; Ohio ex rel. Lloyd v. Dollison, supra; Eilenbecker v. Dist. Court, 134 U. S. 31, 10 Sup. Ct. 424, 33 L. Ed. 801.

[7] The rule applied in the introduction of evidence on defendant's trial, under circumstances indicated by the opinion of the Presiding Judge of the Court of Appeals, accompanying the inquiry of that court under the statute, was in accord with the rule announced in Shields v. State, supra, and the overruling of defendant's objection thereto contravened no right secured to her under the Fourth and Fifth Amendments, or by the "terms and provisions of the Fourteenth Amendment to the Constitution of the United States."

All the Justices concur.

ANDERSON, C. J. (concurring). I concur in the foregoing response to the inquiry of the Court of Appeals. In my opinion, the trial court did not err in admitting the evidence under the Shields, Pope, and other Alabama cases, as well as the decisions of many of the state courts. True, these decisions do not harmonize with the recent Gouled Case, but said case does not and cannot control the state courts, under the authority of Ohio v. Dollison, 194 U. S. 445, 24 Sup. Ct. 703, 48 L. Ed. 1062. Nor does this rule of evidence violate the Fourteenth Amendment, as it applies to all alike who may be tried in the state courts. Ohio v. Dollison, supra.

PER CURIAM. The questions presented by this appeal having been certified to the Supreme Court, and there decided adversely to the contention of appellant, it follows that the judgment of conviction appealed from must be affirmed. Acts 1911, p. 95, § 10.

Affirmed.