### JONES v. STATE.    (7 Div. 812.)

(Court of Appeals of Alabama.    April 3, 1923.
Rehearing Denied May 8, 1923.)

**1. Criminal law ⟜393(2)—Searches and seizures ⟜7—Admission in evidence of liquor found on accused's person after arrest without a warrant held not violation of constitutional rights against searches and seizures and compulsory self-incrimination.**

In a prosecution for possessing intoxicating liquor, where defendant was shown to have been arrested without a warrant or other process and a suitcase taken from him, which, upon being opened, was found to contain whisky, *held*, that his rights under Const. Bill of Rights, §§ 5, 6, against unlawful search and seizure and compulsory self-incrimination had not been violated so as to render his conviction illegal.

**2. Criminal law ⟜1169(1)—Admission of evidence that officer making arrest had warrant for another than accused held not prejudicial.**

In a prosecution for possessing intoxicating liquor, where it was shown that accused had been arrested without a warrant or other process, the admission of immaterial testimony that' the officer at the time of the arrest had a warrant for another man *held* not prejudicial.

Appeal from Circuit Court, De Kalb County; W. W. Haralson, Judge.

Bob Jones was convicted of having prohibited liquors in his possession, and he appeals. Affirmed.

Certiorari denied by Supreme Court in Ex parte Bob Jones, 209 Ala. 566, 96 South. 722.

Isbell & Scott, of Ft. Payne, for appellant.

Evidence obtained by illegal search is incompetent to convict, and the Banks Case, 93 So. 297, and the Shields Case, 104 Ala. 35, should be overruled.    Const. Ala. 1901, art. 1, §§ 5, 6; 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647; 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319.    Evidence that the arresting officer had a warrant for defendant's brother for whom he mistook defendant, is inadmissible.    188 Ala. 9, 65 South. 972.

Harwell G. Davis, Atty. Gen., for the State.

No brief reached the Reporter.

SAMFORD, J.    [1] There are but two questions presented.    The defendant was arrested without warrant or other process and from him was taken a suit case, which, upon being opened, was found to contain two gallons of corn whisky.    It is insisted on the part of the defendant that the arrest was illegal and that he was forced to give evidence against himself, in violation of his constitutional rights, secured to him under sections 5 and 6 of the Bill of Rights, contained in the Constitution of Alabama.

Throughout many centuries our English ancestors struggled for the preservation of their liberties which were embraced in the laws and customs of the people.    Long before Magna Charta was signed by King John, as recorded by Dr. Johnson in his history of Magna Charta, the houses and persons of the freemen of England were secure from unreasonable search and seizure, and through each succeeding reign from Harold to the present time the king, recognizing the doctrine that he held office by the consent of his people, was required to take oath to preserve the liberties, laws, and customs of the people of England.    With such jealousy were they guarded that, says Dr. Johnson, "our laws triumph in this, that they passed through all the British, Roman, Danish, Saxon, and Norman times, with little or no alteration in the main."    Johnson's History, M. C. p. 4.

But these laws and liberties have not been preserved without great effort and sacrifice both of treasure and of life, to such an extent it may be truthfully asserted they were established and maintained in the blood of a liberty loving people, who preferred to die rather than become serfs and slaves of the king and his court.    The right of search and seizure, even under warrant, was never recognized under the ancient common law and as late as the time of Lord Coke (4 Inst. 176) the legality of search warrants, before indictment, was denied, and only came into existence during a later time in England almost unnoticed as a "police weapon" to be used most carefully lest it wound the security or liberty of the citizen.    Buckley v. Beaulieu et al., 104 Me. 56, 71 Atl. 70, 22 L. R. A. (N. S.) 819.    In 1766 the petition of 1,565 freeholders of Middlesex contains, among other wrongs enumerated, that "their houses are rifled and plundered, their papers seized, and used as evidence upon trial" and the petition ends with this significant clause:

"We see ourselves, even by this last act, deprived even of the franchises of Englishmen, reduced to the most abject state of slavery, and left without hopes of means of redress but from your majesty or from God."

Commenting on the foregoing, Sir Wm. Temple says:

"The first safety of princes and states lies in avoiding all councils or designs of innovation, in ancient and established forms and laws, especially those concerning liberty, property, and religion which are the possessions men will ever have most at heart."

The principles of liberty here involved have been written into every Constitution adopted by this state, and this court, in Mary Banks v. State, 18 Ala. App. 376, 93 South. 293, went as far as it could towards preserving to the citizen the substance of the rights guaranteed by the two sections above cited, which now to us seem lost, with

---

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

only the shadow remaining to remind us of the heroic struggle of our fathers, which brought it into being. It may be that the principle is not dead, but only sleeps, awaiting a time when future generations may again demand its awakening. In the meantime this court and trial courts will conform to the decisions of the Supreme Court on the subject. Banks v. State, 18 Ala. App. 376, 93 South. 293, Response of Supreme Court, 207 Ala. 179, 93 South. 297.

[2] Coming now to a consideration of the second proposition—i. e. the admission of testimony that the officer had a warrant for another man at the time he made the arrest of defendant—this evidence was immaterial, but even with it excluded the state would still have been entitled to the general charge which was given. It is therefore conclusive that this ruling could not have injuriously affected the defendant's case.

We find no error in the record, and the judgment is affirmed.

Affirmed.