## THE STATE v. AUSTIN GRAHAM, Appellant.

### Division Two, December 9, 1922.

1. **BILL OF EXCEPTIONS: Not Made Part of Record.** Where the transcript of the record entries concludes with an order reciting the filing of a bill of exceptions, and that recital is followed by the authentication by the clerk in which he certifies "the foregoing to be a complete transcript of the files and orders of record in the above entitled cause," a document attached to said transcript, purporting to be a bill of exceptions and approved by the trial judge, cannot be considered on appeal. A bill of exceptions, when properly signed and filed, forms a part of the record, and it is not sufficient to simply attach it to the transcript of record entries, without certification, but to be considered as such it must be authenticated and identified as a part of the record.

2. ———: **Appellate Jurisdiction.** Where defendant was convicted of the misdemeanor of unlawfully having intoxicating liquor in his possession and no constitutional question arises upon the record proper, and his purported bill of exceptions cannot be considered because not made a part of the record, the Supreme Court has no jurisdiction of his appeal, and the cause must therefore be transferred to the proper court of appeals.

Appeal from Reynolds Circuit Court.—*Hon. E. M. Dearing,* Judge.

TRANSFERRED TO SPRINGFIELD COURT OF APPEALS.

*John H. Keith* for appellant.

*Jesse W. Barrett,* Attorney-General, and *Marshal Campbell,* Special Assistant Attorney-General, for respondent.

HIGBEE, P. J.—The defendant was convicted of the offense of having in his possession intoxicating liquor and his punishment assessed at a fine of $100.

The transcript of the record entries includes the motion for a new trial. One of the grounds for the motion is that the court erred in admitting evidence procured without a search warrant, contrary to the provisions of Articles 4 and 5 of the amendments to the Federal Constitution, and of Sections 11 and 30 of Article 2, and of Section 1 of Article 14, of the Constitution of this State, and of Section 6595, Revised Statutes 1919, as amended in the Laws of 1921, page 416. The motion was overruled and an appeal was granted to this court.

The transcript of the record entries concludes with an order reciting the filing of the bill of exceptions. Then follows the authentication of the clerk by which he certifies "the foregoing to be a complete transcript of the files and orders of record in the above entitled cause." The transcript does not include the bill of exceptions, nor make any further reference to it. There is attached to the transcript by staples a document purporting to be the bill of exceptions in this case, signed by the judge on the —— day of ——, 1922, and marked "O K" by counsel for plaintiff and defendant. These signatures at the end of the document are apparently in the same handwriting; hence for this reason and the further reason that the original is one of the files in the clerk's office, it must be assumed that the document is a copy of the purported bill of exceptions. It is not authenticated by the clerk.

I. A bill of exceptions, when properly signed and filed, forms a part of the record of the cause in which it is filed. [Sec. 1464, R. S. 1919.] The bill of exceptions is not included in the transcript of the files and orders of record in the cause. The document attached to the transcript is not called for nor referred **Bill of Exceptions.** to as an exhibit attached thereto. It is not authenticated nor does the record afford any means by which it can be identified as the bill of exceptions filed in the cause or a copy thereof. It cannot, therefore, be considered as a part of the record.

II. Assuming that the document attached to the transcript is the bill of exceptions filed in this case, does it appear that the appellant's rights under our constitutional provisions have been infringed?

Search Warrant.

It appears that a search warrant was issued directing the sheriff to search the automobile of one G. W. Lester and the grips and packages found therein. This warrant, which was lost before the trial, was put in the hands of the deputy sheriff. He found a grip in Lester's automobile which Lester said belonged to Graham. The deputy took it to a barber shop where he found the defendant, showed him the search warrant and told him what he wanted. The defendant took his key and opened the grip and allowed the deputy to search it; he found two pint bottles which Graham said were his and that they contained whiskey. This testimony went in over the defendant's objection that the deputy had no warrant to search the property or effects of the defendant and the search and seizure were in violation of the laws referred to in the motion for new trial. The defendant offered no testimony.

A search warrant issued under Section 6595, Revised Statutes 1919, as amended, Laws 1921, p. 416, authorizing a search for intoxicating liquors, need not name any particular person, the name of the place or structure to be searched being sufficient. There is no merit in the objection that defendant was not named in the warrant, It authorizes the search of Lester's automobile and the grip and packages found therein. [United States v. Camarota, 278 Fed. 388.]

Section 6595, supra, regulates the issuance of warrants for the search of buildings and structures where it is believed intoxicating liquors are manufactured or sold or kept contrary to the provisions of law. It forbids the issuance of a warrant "to search a private dwelling occupied as such unless some part is used as a hotel, store, or shop, or for any purpose other than a private

dwelling, or upon application to the court, good reason is shown that such aforesaid place is used for the purpose of violation of this act, or unless such residence is a place of resort, or a place in which intoxicating liquors are manufactured.''

In United States v. Bateman, 278 Fed. 231, the right of a prohibition officer to stop an automobile on a public highway and search it for intoxicating liquors without the consent of the driver of the automobile and without any warrant for arrest or search, was considered. The court, on page 233, said:

''In adopting the Volstead Act (41 Stat. 305), Congress took into consideration the question of the right to search and seize certain conveyances. In Section 25 of the Volstead Act, there is this provision:

'' 'No search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor, or unless it is in part used for some business purpose such as a store, shop, saloon, restaurant, hotel or boarding house.'

''Here is an expression of Congress to the effect that in certain instances search warrants shall not be permitted. If Congress had been of the opinion that to search automobiles on a public highway without a search warrant was unreasonable, it certainly would have included, with the prohibition as to dwellings in Section 25, a prohibition as to automobiles.

''Congress had the matter directly before it when it enacted Section 26, which contains the following language:

'' 'When the commissioner, his assistants, inspectors, or any officer of the law shall discover any person in the act of transporting in violation of the law, intoxicating liquors in any wagon, buggy, automobile, water or air craft, or other vehicle, it shall be his duty to seize any and all intoxicating liquors found therein being transported contrary to law.'

"It has been held by one court that that authorized the search and seizure of an automobile, transporting liquors, in violation of the law. [United States v. Crossen, 264 Fed. (D. C.) 459, 462.] In the act of Congress approved November 23, 1921, Section 6 provides as follows:

" 'That any officer, agent, or employee of the United States engaged in the enforcement of this act, or the National Prohibition Act, or any other law of the United States, who shall search any private dwelling as defined in the National Prohibition Act, and occupied as such dwelling, without a warrant directing such search, or who while so engaged shall without a search warrant maliciously and without reasonable cause search any other building or property, shall be guilty of a misdemeanor.'

"Again, if Congress deemed it an unreasonable search and seizure in a case like the one before the court, it had a good opportunity to express its convictions, but it did not. This would seem to be a sanction by Congress to search vehicles or other buildings or property without a warrant, unless the same was done maliciously and without reasonable cause.

"It is my opinion that there is no legislation of Congress upon the subject of searches and seizures of automobiles, except as above specified, and the court must in each individual case determine, as a judicial question, whether or not the search and seizure of an automobile is an unreasonable search or seizure, in view of all the circumstances in the case."

In Holmes v. United States, 275 Fed. 49, the syllabus reads: "Where the only evidence to sustain a charge of illicit distilling was the testimony of prohibition agents that they went to defendant's residence in his absence without a search warrant, and there found certain articles which they believed parts of a still and destroyed, consisting of empty kerosene cans, a keg, a piece of galvanized iron pipe, and a tub, *held,* that such evidence

was illegally obtained, and should have been stricken out on motion, and that in the absence of such motion a motion by defendant for a directed verdict should have been granted.''

In Dukes v. United States, 275 Fed. 142, syllabus 1 reads: ''Where a sheriff and his deputy, without a warrant of arrest or search warrant, entered defendant's house through an open door, and seized whiskey which was on a table by which defendant was standing, the fact that defendant did not object, or that he then said they might look around, which they did, finding more in another building, *held,* not to make the search or seizure lawful, nor to render the evidence so procured admissible against defendant in a criminal prosecution.''

In Gouled v. United States, 255 U. S. 298, 305, 41 Sup. Ct. Rep. 261, 263, Cohen, an agent of the Government and a business acquaintance of defendant Gouled, under directions of his superior officers, pretended to make a friendly call upon defendant, gained admission to his office and in his absence, without warrant of any character, seized and carried away several documents. The court said: ''The prohibition of the Fourth Amendment is against all unreasonable searches and seizures, and if for a Government officer to obtain entrance to a man's house or office by force or by an illegal threat or show of force, amounting to coercion, and then to search for and seize his private papers, would be an unreasonable and therefore a prohibited search and seizure, as it certainly would be, it is impossible to successfully contend that a like search and seizure would be a reasonable one if only admission were obtained by stealth instead of by force or coercion. The security and privacy of the home or office and of the papers of the owner would be as much invaded and the search and seizure would be as much against his will in the one case as in the other, and it must therefore be regarded as equally in violation of his constitutional rights.''

The syllabi to Amos v. United States, 41 Sup. Ct. Rep. 266, 255 U. S. 313, read:

"1.  A petition by accused, presented after the jury was sworn, but before any evidence was offered, for the return to him of property unlawfully seized from him without warrant, and intended to be used in evidence against him, was not presented too late, and should have been granted, and the motion to strike out the evidence obtained by the seizure should have been granted, where the testimony of the Government officers who made it showed conclusively that it was made without warrant.

"2.  Even if the wife of accused could waive his constitutional rights against unlawful search in his absence, she did not waive such rights by admitting to the house the Government officers who presented themselves as such and announced their intention to search, since it is clear that the search was permitted under implied coercion."

The search and seizure in each of these cases was in a private residence or office without a warrant.  In the instant case the search and seizure were in an automobile and upon a lawful warrant.  There is nothing in Section 6595, Revised Statutes 1919, requiring the issuance of a warrant for the search and seizure of liquor unlawfully transported in an automobile or other conveyance.  Here the deputy sheriff lawfully seized the defendant's grip and took it to him.  The defendant naturally asked the officer by what authority he seized his grip.  The deputy then showed the warrant and, for anything that appears in the evidence, the defendant voluntarily opened his grip and the sheriff found and seized the two bottles of whiskey.

In United States v. Barry, 260 Fed. 291, syllabus 2 reads:  "The seizure of documents, belonging to an army officer charged with an offense, from his desk, to which he voluntarily turned over the key, *held* not a violation of his constitutional rights, whether or not the documents were used on his trial by court-martial."

In Amos v. United States, supra, the search was unlawfully made in the defendant's house without a warrant of any kind.

It will be seen that in the foregoing Federal cases relied upon by the appellant, the searches and seizures were made on the private premises of the accused without any warrant authorizing search and seizure. The search made in this case was not forbidden by law and required no warrant. The officer was not a trespasser, but acted in the performance of his duty.

III. Search warrants are much older than our institutions. ''Under the common law and statutes of England, the person, property and premises of the individual were subject, practically unlimited, to search and seizure, which became so oppressive and intolerable that when the people of this country founded the various states and nation, sooner or later they provided in the constitutions thereof, that the people should be secure in their persons, houses, papers and effects, against unreasonable search and seizure, etc. [Fourth Amendment of the Constitution of the United States; Sec. 11, art. 2, Constitution of Missouri.]'' State ex rel. v. Anderson, 270 Mo. 533, 536.

Evidence Obtained by Search.

The provisions of our State and Federal Constitutions cited by appellant are restrictions and limitations upon unreasonable searches and seizures as theretofore practiced at common law. The right of search and seizure obtains except as limited by law. What is an unreasonable search and seizure is a judicial question.

We quote from 35 Cyc. 1269: ''The Fourth Amendment to the Constitution of the United States declaring that 'the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, shall not be violated' is not a limitation upon the powers of the states, but operates solely on the Federal government. This amendment and the following or fifth constitutional amendment, which protects persons against being compelled to be witnesses agaits themselves in criminal cases, may be invoked in behalf of aliens residing in the United States, and they

also protect persons, not only from the unreasonable seizure of their private papers, but from the use of such papers, when unlawfully seized, as evidence against them in cases involving a forfeiture of their property or personal rights.''

On page 1271, it is said: ''It is well settled that a person legally arrested and in the custody of the law on a criminal charge may be subjected to a personal search and examination, even though against his will, for evidence of his criminality, and, if found, it may be seized without violating his constitutional rights. And if any person, even by an illegal search or seizure, procure possession of any article, instrument or document, the State may, notwithstanding such illegal seizure, use it if necessary as legitimate evidence against the person from whom it was so obtained to convict him of a crime, or upon an investigation against such person before a grand jury, it being an established rule that the court can take no notice of how such evidence was obtained, whether originating from a legal or an illegal source.''

In Lucchesi v. Commonwealth, 94 S. E. (Va.) 925, it was held that evidence that a suit case, seized while in the possession of the defendant when arrested and opened after a warrant was issued charging him with violation of the law regulating the transportation of ardent spirits, contained liquor, is admissible. [Syl. 2.]   The court, after quoting the paragraph from 35 Cyc. 1271, supra, and a like citation from 8 R. C. L. 196, on page 926, said:

''Counsel for the accused relies upon the case of Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, as authority for the contrary view.   Even if it were, it would be opposed to the overwhelming weight of authority.   So far, however, from sustaining the proposition contended for, the contrary doctrine is expressly recognized in this paragraph of the opinion.

'' 'What, then, is the present case?   Before answering that inquiry specifically, it may be well, by a process

of exclusion, to state what it is not. It is not an assertion of the right on the part of the government, always recognized under English and American law, to search the person of the accused, when legally arrested, to discover and seize the fruits or. evidences of crime. This right has been uniformly maintained in many cases. [1. Bish. on Cr. Proc. sec. 211; Wharton, Cr. Pl. & Pr. (8 Ed.) sec. 60; Dillon v. O'Brien & Davis, 16 Cox, C. C. 245, Ir. L. R. 20 C. L. 300, 7 Am. Cr. Rep. 66.] Nor is it the case of testimony offered at a trial where the court is asked to stop and consider the illegal means by which proofs, otherwise competent, were obtained, of which we shall have occasion to treat later in this opinion. Nor is it the case of burglar's tools or other proofs of guilt found upon his arrest within the control of the accused.'

"What the court did hold in that case was that under the Fourth Amendment of the United States Constitution, upon seasonable application by the accused for the return of his letters and private documents, seized in his house during his absence by a United States marshal holding no warrant for his arrest and none for the search of his premises, they should be returned to him, and could not be used against him in the criminal prosecution; and the opinion concludes with this:

"'We therefore reach the conclusion that the letters in question were taken from the house of the accused by an official of the United States acting under color of his office in direct violation of the constitutional rights of the defendant, that, having made a seasonable application for their return, which was heard and passed upon by the court, there was involved in the order refusing the application a denial of the constitutional rights of the accused, and that the court should have restored these letters to the accused. In holding them and permitting their use upon the trial, we think prejudicial error was committed. As to the papers and property seized by the policemen, it does not appear that they acted under any claim of Federal authority such

as would make the amendment applicable to such unauthorized seizures. The record shows that what they did by way of arrest and search and seizure was done before the finding of the indictment in the Federal court, under what supposed right or authority does not appear. What remedies the defendant may have against them we need not inquire, as the Fourth Amendment is not directed to individual misconduct of such officials. Its limitations reach the Federal government and its agencies.'—Citing Boyd's Case, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746.''

The rule is established in this State, in accordance with the overwhelming weight of authority, that papers taken from the defendant's pockets at the time of his arrest and kept by the police until the day of the trial, are not incompetent evidence, and their admission does not violate defendant's rights as declared by the constitutional provision which says that ''no person shall be compelled to testify against himself;'' and even though they were obtained by unlawful search and seizure, that did not render them incompetent evidence. [State v. Sharpless, 212 Mo. 176; State v. Pomeroy, 130 Mo. 489; State v. Kramer, 206 Mo. App. 49, 226 S. W. 645; State v. Pope, 243 S. W. l. c. 254.]

IV. In Lucchesi v. Commonwealth, 94 S. E. 925, on page 928, the court said: ''The accused asked the court to instruct the jury that, if they believed that the ardent spirits were brought into the State by the accused for his own personal use, and not for manufacture or sale, they should find the prisoner not guilty. This instruction is based upon the assertion that the State lacks power to prohibit the transportation of ardent spirits into this State for personal use, and not for manufacture or sale, and the question is argued with great force and vigor. It is sufficient to say as to this that recent cases decided by the Supreme Court of the United States make it clear and fully determined that the State has plenary

State's Power to Legislate.

295 Mo.—45

power to prohibit the importation of ardent spirits into the State for any purpose. [Clark Distilling Co. v. Western Maryland Ry. Co., 242 U. S. 311, 37 Sup. Ct. 180, 61 L. Ed. 326, L. R. A. 1917B, 1218, Ann. Cas. 1917B, 845; Crane v. Campbell, 245 U. S. 304, 38 Sup. Ct. 98.] The question may be regarded as definitely settled by these cases.''

In State v. George, 243 S. W. 948, it was held by our Springfield Court of Appeals that the Eighteenth Amendment and the Volstead Act did not repeal state prohibition laws not inconsistent therewith. Hence it appears that there is no merit in appellant's contention.

However, as the bill of exceptions cannot be considered and the defendant was convicted of a misdemeanor and no constitutional question arises

Appellate
Jurisdiction.

upon the record proper, this court has no jurisdiction of the appeal. The cause is therefore transferred to the Springfield Court of Appeals. All concur; *David E. Blair, J.,* in result; *Walker, J.,* in separate opinion.

WALKER, J. (concurring).—The offense charged was a misdemeanor. There being no bill of exceptions, a determination of our jurisdiction is limited to the record proper; it discloses nothing giving ths court jurisdiction. Comments and conclusions, therefore, other than to transfer the case to the Court of Appeals, are *obiter,* without either persuasive or binding force.

In the transfer of the case, I concur.