State v. Aime, 62 Utah 476

## STATE v. AIME.

No. 4046.   Decided November 15, 1923.   (220 Pac. 704.)

1. COURTS—SEARCHES AND SEIZURES—FEDERAL CONSTITUTION AS TO SEARCHES AND SEIZURES NOT APPLICABLE TO STATE, AND FEDERAL DECISIONS NOT BINDING ON STATE COURTS AS TO STATE CONSTITUTIONS. The Fourth and Fifth Amendments to the federal Constitution, affording immunity from unreasonable searches and seizures, and providing that no person shall in any criminal case be compelled to be a witness against himself, do not apply to state governments or proceedings in state courts, and decisions of the Supreme Court of the United States as to the admissibility of evidence under those amendments are not binding on state courts in interpreting similar provisions of their state Constitutions.

2. CRIMINAL LAW—LIQUOR TAKEN UNDER ILLEGAL SEARCH AND SEIZURE ADMISSIBLE. Liquor taken from an accused person by means of an illegal search and seizure, in violation of state constitutional provisions similar to the Fourth and Fifth Amendments to the federal Constitution, is admissible in evidence.

3. NAMES—IDENTITY PRIMA FACIE EVIDENCE OF IDENTITY OF PERSONS. Identity of names is prima facie evidence of identity of persons.

4. CRIMINAL LAW—EVIDENCE HELD TO WARRANT FINDING OF PRIOR OFFENSE. In a prosecution under Comp. Laws 1917, § 3345, for being a persistent violator of the act prohibiting the manufacture and use of intoxicating liquors, etc., evidence *held* sufficient to sustain a finding of previous conviction.

5. CRIMINAL LAW—FAILURE OF DEFENDANT TESTIFYING TO DENY FACT WARRANTS INFERENCE OF TRUTH. While under Comp. Laws 1917, § 9279, the neglect or refusal of a defendant to be a witness cannot prejudice him, or be used against him, when he voluntarily testifies, he is subject to the same rules as other witnesses, and his failure to deny a material fact within his knowledge previously testified to against him, warrants the inference that it was true.[1]

Appeal from District Court, Fourth District, Uintah County; *Elias Hansen*, Judge.

[1] *State* v. *Mattivi*, 39 Utah, 334, 117 Pac. 31.

John Aime was convicted of being a persistent violator of the act prohibiting the manufacture and sale of intoxicating liquors, and appeals.

AFFIRMED.

*Thos. W. O'Donnell,* of Vernal, for appellant.

*Harvey H. Cluff,* Atty. Gen., and *W. Hal. Farr,* Asst. Atty. Gen., for the State.

CHERRY, J.

The defendant was convicted under Comp. Laws Utah 1917, § 3345, of being a persistent violator of the act prohibiting the manufacture and use of intoxicating liquors, etc. (Comp. Laws Utah 1917, §§ 3341-3381) and appeals.

It is charged in the information that on September 26, 1922, at Uintah county, the defendant unlawfully, willfully, and feloniously had in his possession intoxicating liquor, and was then and there a persistent violator of the act prohibiting the manufacture, etc., of intoxicating liquor, having theretofore, on January 11, 1921, in the justice's court of Vernal precinct, in said county, been convicted of unlawfully manufacturing intoxicating liquors.

Previous to defendant's arrest, the sheriff of the county made a search of defendant's premises under a search warrant, and seized, among other things, a keg containing intoxicating liquor. It subsequently appeared that the affidavit upon which the search warrant was issued was not signed. Before the trial the defendant made a motion to suppress the evidence taken by the sheriff under the illegal warrant, which was denied. At the trial the keg and contents were admitted in evidence over the defendant's objections. The admission of the evidence so obtained is alleged as error. The Attorney General concedes that the search warrant was invalid, and the search and seizure under it illegal. Thus is presented the question: Is evidence taken from an accused person by means of an illegal search and seizure thereby rendered inadmissible

against him? The question is an open one in this state, and its decision is of public importance. In recent years the subject has been before many American courts, and has been very thoroughly and exhaustively considered, resulting in a clearly defined conflict of opinion. See annotation, 24 A. L. R. 1408, where the cases are collated and classified.

Reference to the course and state of judicial opinion and a summary of argument will suffice for the purposes' of this decision.

The general rule that the admissibility of evidence is not affected by the illegality of the means through which it had been obtained, is of long standing and general application. 1 Greenleaf on Ev. § 254a; 5 Jones on Ev. § 884; 2 Wharton, Crim. Ev. § 518g; 4 Wigmore on Ev. (2d Ed.) § 2183. The cases in which this rule has been approved and applied are too numerous to be cited here. It is enough to say it has had the sanction of practically all American courts, both state and federal. A list of the cases is published in 24 A. L. R. 1411. The rule and the legal principles supporting it are stated in 4 Wigmore on Ev. (2d Ed.) § 2183, as follows:

"Necessity does not require, and the spirit of our law does forbid, the attempt to do justice incidentally and to enforce penalties by indirect methods. An employer may perhaps suitably interrupt the course of his business to deliver a homily to his office boy on the evils of gambling or the rewards of industry. But a judge does not hold court in a street car to do summary justice upon a fellow passenger who fraudulently evades payment of his fare; and, upon the same principle, he does not attempt, in the course of a specific litigation, to investigate and punish all offenses which incidentally cross the path of that litigation. Such a practice might be consistent with the primitive system of justice under an Arabian sheikh, but it does not comport with our own system of law. It offends, in the first place, by trying a violation of law without that due complaint and process which are indispensable for its correct investigation. It offends, in the next place, by interrupting, delaying, and confusing the investigation in hand, for the sake of a matter which is not a part of it. It offends further in that it does this unnecessarily and gratuitously; for, since the persons injured by the supposed offense have not chosen to seek redress or punishment directly and immediately, at the right time and by the proper process, there is clearly no call to attend to their complaints in this indirect and tardy manner. The judicial rules of evidence were

never meant to be an indirect process of punishment. It is not only anomalous to distort them to that end, but it is improper (in the absence of express statute) to enlarge the fixed penalty of the law, that of fine or imprisonment, by adding to it the forfeiture of some civil right through loss of the means of proving it. The illegality is by no means condoned; it is merely ignored. For these reasons it has long been established that the admissibility of evidence is not affected by the illegality of the means through which the party has been enabled to obtain the evidence."

In 1886 the rule was first questioned in *Boyd* v. *U. S.,* 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, and by that decision and a series of cases following, notably, *Weeks* v. *U. S.,* 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; *Silverthorne Lbr. Co.* v. *U. S.,* 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319; *Gouled* v. *U. S.,* 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647, and *Amos* v. *U. S.,* 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654, the Supreme Court of the United States has developed a rule to the effect that under the Fourth and Fifth Amendments to the federal Constitution (affording immunity from unreasonable searches and seizures, and providing that no person shall in any criminal case be compelled to be a witness against himself) evidence obtained from the accused by an officer or agent of the government, by means of an illegal search and seizure is not admissible in a criminal action, over proper objections, against the accused. This rule has since been followed in the inferior federal courts, and has been adopted by some state courts. *Callender* v. *State* (Ind.) 136 N. E. 10; *Youman* v. *Com.,* 189 Ky. 152, 224 S. W. 860, 13 A. L. R. 1303; *People* v. *Marxhausen,* 204 Mich. 559, 171 N. W. 557, 3 A. L. R. 1505; *Tucker* v. *State,* 128 Miss. 211, 90 South. 845, 24 A. L. R. 1377; *Hughes* v. *State,* 145 Tenn. 544, 238 S. W. 588, 20 A. L. R. 639; *State* v. *Wills,* 91 W. Va. 659, 114 S. E. 261, 24 A. L. R. 1398.

The federal doctrine is vigorously assailed by Prof. Wigmore (4 Wigmore on Ev. [2d Ed.] § 2184) upon the grounds generally that it involves the trial of a collateral issue, erroneously assumes that the party from whom the evidence was illegally obtained has a right to its return, and creates an exception to a well-established rule resting upon "a reverence

for the Fourth Amendment so deep and cogent that its viola-
tion will be taken notice of, at any cost of other justice, and
even in the most indirect way."

The Fourth and Fifth Amendments to the federal Consti-
tution do not apply to state governments or proceedings in
state courts (*Spies* v. *Illinois*, 123 U. S. 131, 8 Sup. Ct. 22,
31 L. Ed. 80; *Weeks* v. *U. S.*, 232 U. S. 383, 34 Sup. Ct. 341,
58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177),
and the decisions of the Supreme Court of the United
States as to the admissibility of evidence under those
amendments are not binding on state courts in inter-
preting similar provisions of their own state Constitutions
(*Banks* v. *State*, 207 Ala. 179, 93 South. 293, 24 A. L. R.
1359; *People* v. *Mayen*, 188 Cal. 237, 203 Pac. 435, 24 A. L.
R. 1383; *State* v. *Tonn*, 195 Iowa, 94, 191 N. W. 530; *Billings*
v. *State* [Neb.] 191 N. W. 721; *Com.* v. *Wilkins*, 243 Mass.
356, 138 N. E. 11).

Since the federal rule has been laid down, a large majority
of the state courts which have spoken on the subject have de-
clined to follow it, but have decided directly to the contrary,
and held that evidence taken from an accused person by
means of an illegal search and seizure in violation of state
constitutional provisions similar to the Fourth and Fifth
Amendments to the federal Constitution was not on that ac-
count inadmissible as evidence against the accused. The fol-
lowing array of state cases, all decided subsequent to *Weeks*
v. *U. S.*, and in conflict therewith, indicate the general op-
position to the rule of the federal courts: *Banks* v. *State*,
207 Ala. 179, 93 South. 293, 24 A. L. R. 1359; *Benson* v.
*State*, 149 Ark. 633, 233 S. W. 758; *People* v. *Mayen*, 188 Cal.
237, 205 Pac. 435, 24 A. L. R. 1383; *State* v. *Magnano*, 97
Conn. 543, 117 Atl. 550; *Calhoun* v. *State*, 144 Ga. 679, 87
S. E. 893; *State* v. *Anderson*, 31 Idaho, 514, 174 Pac. 124;
*People* v. *Paisley*, 288 Ill. 310, 123 N. E. 573; *State* v. *Tonn*,
195 Iowa, 94, 191 N. W. 530; *State* v. *Van Wormer*, 103 Kan.
309, 173 Pac. 1076, 180 Pac. 450; *State* v. *Creel*, 152 La. 888,
94 South. 433; *Com.* v. *Wilkins*, 243 Mass. 356, 138 N. E. 11;
*State* v. *Graham*, 295 Mo. 695, 247 S. W. 194; *State* v. *Hesse*
(Minn.) 191 N. W. 267; *State* v. *Reed*, 53 Mont. 292, 163 Pac.

477, Ann. Cas. 1917E, 783 (see *State* v. *District Court,* 59
Mont. 600, 198 Pac. 362) ; *Billings* v. *State* (Neb.) 191 N. W.
721; *State* v. *Agalos,* 79 N. H. 241, 107 Atl. 314; *State* v.
*Barela,* 23 N. M. 395, 168 Pac. 545, L. R. A. 1918B, 844;
*People* v. *Esposito,* 118 Misc. Rep. 867, 194 N. Y. Supp. 326;
*State* v. *Simmons,* 183 N. C. 684, 110 S. E. 591; *Knight* v.
*State,* 16 Okl. Cr. 298, 182 Pac. 736; *State* v. *Ware,* 79 Or.
367, 154 Pac. 905, 155 Pac. 364; *State* v. *Green* (S. C.) 114
S. E. 317; *City of Sioux Falls* v. *Walser,* 45 S. D. 417, 187
N. W. 821; *Welchek* v. *State,* 93 Tex. Cr. R. 271, 247 S. W.
524; *Lucchesi* v. *Com.,* 122 Va. 872, 94 S. E. 925.

In *Banks* v. *State,* supra, it is said:

"The reasoning on which the rule rests is said to be that the
court, when engaged in the trial of a criminal action, 'will not take
notice of the manner in which a witness has possessed himself of
papers or other chattels, subjects of evidence, which are material
and properly offered in evidence' (citing cases); to pursue such
inquiry would halt the orderly progress of a cause in the considera-
tion of an incidental question, which has crossed the path of such
litigation and 'wholly independent' thereof.  *  *  *  (Citing cases.)
Mr. Freeman, approving the foregoing reasons, says: 'Others might
be advanced, having their roots in the principles of logic, and based
upon the nature and properties of evidence and its purposes; * * *
that the object of evidence is to elicit truth and it can never be said
that the probative value of any evidentiary fact is affected in the
smallest particular by the manner or the means whereby the fact
itself was obtained.' See 136 Am. St. Rep. 142, note."

In *People* v. *Mayen,* supra, the court said:

"It may in this connection be noted that the decisions of our
own court and of every other jurisdiction are in entire accord with
the Supreme Court of the United States in holding that the seizure
by officers of the law of private papers and effects by unlawful and
unauthorized entry and search, to be used as evidence in criminal
prosecutions of the persons from whom taken, is a violation of the
constitutional right to security against unreasonable searches and
seizures; and that such constitutional guaranty is one which should
be zealously enforced in behalf of every citizen.  But no authority,
so far as we have been able to discover, has suggested that the sub-
sequent use of articles so taken as evidence is in itself any part
of the unlawful invasion of such constitutional guaranty.  The
search and seizure are complete when the goods are taken and re-
moved from the premises.  Whether the trespasser converts them
to his own use, destroys them, or uses them as evidence, or volun-

tarily returns them to the possession of the owner, he has already completed the offense against the Constitution when he makes the search and seizure, and it is this invasion of the rights of privacy and the sacredness of a man's domicile with which the Constitution is concerned."

And again:

"The fallacy of the doctrine contended for by appellant is in assuming that the constitutional rights of the defendant are violated by using his private papers as evidence against him, whereas it was the invasion of his premises and the taking of his goods that constituted the offense, irrespective of what was taken or what use was made of it; and the law having declared that the articles taken are competent and admissible evidence, notwithstanding the unlawful search and seizure, how can the circumstance that the court erred in an independent proceeding for the return of the property on defendant's demand add anything to or detract from the violation of defendant's constitutional rights in the unlawful search and seizure? There might be some reason, on grounds of public policy, for the state to refuse the use of evidence thus wrongfully seized, on the ground that its admission encourages and in a sense condones the lawless acts of overzealous officers of the law in their methods of obtaining evidence in criminal cases but in the absence of any legislative or judicial declaration to that effect after the litigation of the question in numerous cases in nearly every existing state jurisdiction, dating back over a hundred years, as suggested in *Williams* v. *State*, supra, the courts may properly wait on legislative action to change the rule. In the Gouled Case the Federal Supreme Court extends the protection of the Fifth Amendment to the Constitution against this class of evidence, applying the rule announced in *Boyd* v. *United States*, 116 U. S. 616, 29 L. Ed. 746, 6 Sup. Ct. Rep. 524. With the utmost deference to the high authority from which this doctrine comes, we do not feel justified in accepting it as a rule of evidence under the law of California and in the application of our state Constitution thereto."

In *Welchek* v. *State*, supra, the court said:

"In our judgment, however, the proper decision of the question before us rests on the fact that there is nothing in the constitutional provision inhibiting unreasonable searches and seizures which lays down any rule of evidence with respect to the evidential use of property seized under search without warrant, nor do we think anything in said constitutional provision can be properly construed as laying down such rule. It seems to us that it is going as far as the provision of said Constitution demands to admit that one whose property is wrongfully obtained in any manner is entitled to his day in some court of competent jurisdiction and to a

hearing of his' claim for the restoration of such property, and for the punishment of the trespasser or the announcement that the citizen may defend against such intrusion; but it must always be borne in mind, if there appear the fact that said property by its physical appearance upon the trial will aid the court in arriving at a correct conclusion in a criminal case, that the owner's right to the return thereof should be held in abeyance until said property has served the government, the whole people, by its appearance in testimony. Nor can the rejection of the proffer in testimony of such property be soundly sustained upon the theory that the officer or person who removed such property having evidential value from the house or curtilage of its owner should be punished for an entry into said premises without search warrant. To reject such evidence for such reason or to completely return same to the owner and relinquish jurisdiction over same would in no wise be a punishment to the officer, but would rather be a hurt inflicted upon the people, whose interest in the punishment of crime suffers because the court may think the officer should be rebuked for the manner in which he obtained the evidence."

In *Com.* v. *Wilkins*, supra, the court said:

"It is a generally recognized principle of the law of evidence that courts do not pause in the trial of cases to investigate whether physical evidence, such as intoxicating liquors kept, carried or sold contrary to law, was obtained lawfully or unlawfully. That is regarded as a collateral inquiry. The only matter considered by the court is whether such evidence is pertinent to the issue. Courts do not impose an indirect penalty upon competent evidence because of illegality in obtaining it. An ordinary police officer is not regarded as the agent of government if he acts outside the scope of his authority in seizing tangible evidence of crime. He does not carry with him the support of the government, but incurs personal liability if he fails to keep within the bounds of his duty. Outside those bounds he has no more color of authority than a private individual. Whether he commits a crime or a civil wrong, the offending officer alone is responsible. *Bolster* v. *Lawrence*, 225 Mass. 387, 114 N. E. 722, L. R. A. 1917B, 1285, and cases cited. For the misconduct of a private individual the government is not answerable. He may be brought to court to answer for his wrong either civilly or criminally. But his misconduct ought not to hamper the government in the enforcement of laws and the preservation of order. The wrong committed in seizing the liquor without a warrant was a transaction by itself. It has no necessary connection with its subsequent use as evidence. * * *

We are unable to assent to the distinctions established by the federal decisions. The presentation of evidence in court in prosecution of crime is by the district attorney, who for that purpose is

the representative of the government. He alone decides what evidence shall be offered. It seems to us that whether physical property seized through an unreasonable search should be received in evidence when presented by the government attorney cannot soundly depend upon the antecedent and disconnected fact that the unreasonable search by which it was unlawfully obtained was made by a police officer without any warrant instead of by a private individual acting on his own responsibility. The decisions of the United States courts and all other courts appear to be unanimous in holding that in the latter instance property will be admitted in evidence, if otherwise competent, against the owner on trial for a crime. We prefer to adhere to our rule, which makes the competency of evidence depend upon its inherent probative value rather than upon outside circumstances, and which leaves the redress of grievances for invasion of constitutional rights to the usual and adequate provisions of the civil and criminal law."

The decided weight of authority is in favor of the general rule first referred to, and against the federal rule. We are impressed with the reasons and legal principles upon which the majority rule is based and the considerations of public welfare which demand its adoption. The law cannot be justly administered without a knowledge of the facts in dispute. The purpose of evidence is to establish the truth in legal tribunals, in order that justice may be done. The facilities for accomplishing this purpose ought not to be diminished without cogent reasons. In determining the competency of evidence, the essential test is its credibility and its value in discovering the truth. This is the paramount consideration. The constitutional immunity against unreasonable searches and seizures is not to be diminished or disparaged. It may be defended to the last limit. The man who violates it does so at his peril, and is subject to all consequences and penalties provided by law. But, as was said in *Shields* v. *State,* 104 Ala. 35, 16 South. 85, 53 Am. St. Rep. 17:

"The law appoints the remedy for the redress of the wrong, but the exclusion of the evidence criminating the defendant is not within the scope of the remedy, or the measure of redress."

With the profoundest respect for the high tribunal which has reached a contrary conclusion, we are led by the force of what we deem the better reason to conclude with the vast majority of state courts that the admissibility          2

of evidence is not affected by the illegality of means through which it has been obtained, and that in the instant case the court did not commit error in admitting in evidence the keg and contents, even though the sheriff obtained the same from the defendant's premises by an illegal search and seizure.

It is next contended that the evidence of the defendant's previous conviction, which was a fact necessary to be proved to sustain the verdict, was insufficient. The proof consisted of the record of the previous conviction of John Aime, in the justice's court of the precinct where the defendant resided, of the offense of manufacturing intoxicating liquor. No additional evidence was offered to show the identity of the defendant and the person described in the record of conviction. The defendant was sworn as a witness, and testified on other subjects, but was not interrogated upon the question of former conviction, and did not deny that he had been so convicted.

The matter of identity was submitted to the jury as a fact to be determined by them from the evidence, under the usual instructions, and a verdict of guilty as charged was returned.

It is a general rule that identity of names is prima facie evidence of identity of persons. Lawson on Presumptive Ev. 307; 15 Am. & Eng. Ency. of Law, 918; *State* v. *McGuire,* 87 Mo. 642; *People* v. *Riley,* 75 Cal. 98, 16 Pac. 544; *Files* v. *State,* 16 Okl. Cr. 363, 182 Pac. 911. While there are cases to the contrary (*State* v. *Smith,* 129 Iowa, 709, 106 N. W. 187, 4 L. R. A. [N. S.] 539, 6 Ann. Cas. 1023; *Thompson* v. *State,* 66 Fla. 206, 63 South. 423), we think, where the name is not a common one, and there is nothing to indicate that more than one person in the vicinity was known of the same name, proof of the identity of names is sufficient to warrant the conclusion of identity of persons, until the contrary appears.

But the verdict in this case does not rest upon the bare proof of identity of name. There was the additional circumstance that the previous conviction was had in the precinct of defendant's residence, and the more significant fact that,

although the defendant testified as a witness in his own be-
half, he did not deny that he was the person described
in the record of conviction previously introduced in        **4, 5**
evidence against him.  While under Comp. Laws Utah
1917, § 9279, the neglect or refusal of a defendant to be a
witness cannot prejudice him or be used against him, when
he voluntarily testified he is subject to the same rules as other
witnesses, and his failure to deny a material fact within his
knowledge previously testified to against him warrants the
inference that it was true.  *State* v. *Mattivi*, 39 Utah, 334,
117 Pac. 31.

We conclude that the evidence of the defendant's prior
conviction was sufficient to sustain the verdict.

Upon the record no prejudicial error appears, and the judg-
ment is accordingly affirmed.

WEBER, C. J., and GIDEON, THURMAN, and FRICK,
JJ., concur.