## STATE v. GARDNER.

No. 7490.   Decided April 28, 1951.   (230 P. 2d 559.)

Rehearing denied August 23, 1951.

See 22 C. J. S., Criminal Law, Sec. 817. Confession, delay in procedural requirements as affecting admissibility of. 20 Am. Jur., Evidence, Sec. 499; 94 A. L. R. 1036.

*Neil R. Olmstead, David K. Holther*, Ogden, for appellant.

*Hon. Clinton D. Vernon*, Atty. Gen., *Bryce E. Roe*, Salt Lake City, for respondent.

WADE, Justice.

Defendant, Ray Dempsey Gardner, appeals from a conviction of murder in the first degree and death sentence. He claims such conviction is invalid because his confession, made while he was in custody and when he was not promptly taken before a magistrate, was used as evidence against him. He makes no claim that the confession was coerced or involuntary but contends that it was prejudicial error to use such confession, made while he was being held and not taken without unnecessary delay before a magistrate contrary to Sec. 105—12—14, U.C.A. 1943, and that under Sec. 1 of the 14th Amendment to the Federal Constitution as construed by the United States Supreme Court, and Article 1, Sec. 7 of the Utah Constitution he was convicted without due process of law.

On July 21, 1949, the murdered body of Shirley Gretzinger, an unmarried girl of seventeen years, was found in a clump of trees and bushes between a road south of Ogden, Utah and the adjacent sidewalk to the north. Her clothing, except her sandals, had been torn off, her body bruised, mutilated and violated and she had been strangled to death by wadded toilet paper in her throat. The night before she had failed to return home from a baby sitting engagement.

On July 18th, defendant left his employment on the Walton fruit farm some miles north of Ogden stating he was going to his home back east. On the evening of the

21st, he unexpectedly returned, his clothing grass-stained and wrinkled, and he took an unusual interest in the newspaper accounts of the Gretzinger murder which was first discovered that morning. He again disappeared from the Walton farm on the evening of the next Sunday, July 24th, while the Walton family was attending the Pioneer Pageant at Ogden and at that time some clothing and a 22 pistol were also missing. On Sunday, August 14, defendant drove to the Walton farm in a new green Dodge car with a Wyoming license plate but left hurriedly on seeing that one of the boys was home. He drove through a stop sign without stopping and ran into and overturned a trailer on the main highway and left the scene of the accident without stopping. One of his front lights and a fender were damaged in the collision and in response to a call from the Weber County Sheriff's office he was picked up at Layton, which is south of Ogden, by the deputy marshal of Clearfield and returned to Ogden where, on being identified by the Waltons, he claimed he had never seen them before. He was booked for larceny, hit-and-run driving and driving through a stop sign.

On searching the car he was driving, the 22 pistol and articles of clothing which were missed at the Walton farm when he disappeared therefrom on the evening of the 24th of July were found with other articles which indicated the car had been stolen and brought from Wyoming to Utah and still other articles which suggested a connection with Shirley Gretzinger. From this and the circumstances of his leaving the Walton farm on the 18th and return on the 21st he was suspected of that murder.

Early on the morning after his arrest, defendant interviewed a lawyer who was visiting another prisoner at the Weber County jail and he retained that lawyer and his associate which retention terminated September 13th. During the afternoon of his arrest, he interviewed the

associate lawyer after the Sheriff's office had at first refused permission for such visit. These lawyers visited with defendant at least six times besides appearing with him before the United States Commissioner and in the Federal Court. The associate attorney testified that many times during such employment the Sheriff's office refused to allow him to see defendant.

On August 16th, the second day after his arrest, defendant was interviewed by two agents of the Federal Bureau of Investigation. They first informed him who they were and that he did not have to make any statement but could do so if he wished of his own free will and choice, that he had the right to consult counsel and that anything he said might be used against him in court. During that interview, he made a signed confession that he had stolen the green Dodge car in Wyoming and brought it to Utah, and on August 20th, he was charged with that offense and taken before the United States Commissioner on the 22nd, who bound him over to the Federal District Court where he was arraigned and pleaded not guilty on the 25th.

On September 3rd, while awaiting trial in the Federal court, he made a written confession to the Sheriff of Weber County that he had shot and killed a woman in Butte, Montana early in August a few days prior to his arrest. On that day he, with the sheriff and an Ogden City police officer, left for Butte where he took them and the Butte officers over the scene of the Butte killing and explained in detail how it occurred. He returned to Ogden on the 6th, and on the 8th the Dyer act charge in the Federal Court was dismissed, and he was charged with murder in the first degree in Butte, Montana and a warrant for his arrest was sent to the Weber County Sheriff. On Sunday September 10, 1949, at his request, defendant was granted an interview with the sheriff in the presence of a trustee of the jail, where he asked the nature of the evidence which

they had against him in the Gretzinger case and upon being told he made a written confession of that crime. Two days later, he went with the sheriff, the sheriff's secretary, the Ogden City police officer, and several news reporters from the place where he met Shirley on the evening of the 20th of July over the route they traveled to the scene of the murder and then to places where he had deposited some of her clothing, her watch and other articles taken from her body. As they went along he described the events as they occurred and finally found and produced the articles which he had taken from her body in the places where he had deposited them. No complaint was filed charging him with this crime until September 28th, twenty days after the Dyer act charge was dismissed during which time he was held by the Weber County Sheriff but no further confessions were made after the 12th. At the trial, the state failed to prove that he was expressly told that he did not have to talk, that he had a right to consult an attorney or that anything he said might be used against him in court, and although there was no evidence that any coercion or pressure was exerted to induce the written confession made on the 10th, and in his own language he stated in the confession that it was voluntarily made without any fear, threats or promises, the court rejected that confession and refused to receive it in evidence. The correctness of this ruling is not questioned by this appeal and we express no opinion thereon. The state proved that he was fully informed of his rights before the oral confession of the 12th was made and the court admitted that one in evidence.

Here there is no claim that this confession was the result of actual coercion or pressure or was involuntary. There is not a word in the evidence that it was the result of any kind of coercion, pressure or mistreatment of any kind. It was made after repeated consultation with his lawyers and after he had twice been fully informed of his rights on previous occasions. He expressly requested that the

sheriff come from his home on Sunday morning to the jail for the interview and that it be held in the presence of a trustee both of which requests were granted, and he proceeded to question the sheriff. When the sheriff had answered his questions, he volunteered the statement that he was guilty and proceeded to write out the confession in his own language expressly therein stating that it was made voluntarily and without fear, threats or promises. He was 27 years of age at the time, was acquainted with the ways of police officers and courts and appeared to be a person who makes up his own mind and not easily influenced.

The mere fact that the sheriff refused to allow counsel to visit him every time counsel wished to does not render his confession inadmissible in evidence. There is no evidence that his defense was in any way hampered by these refusals or that the defendant wished to consult with such attorneys on those occasions. Some of the reasons which the sheriff gave for the refusals were that defendant did not want to be bothered, and that he was not in the jail at that time. As to some of the occasions, the latter reason was true for he was away on his trip to Montana from the 3d to the 6th, during which time some of these refusals occurred. The attorneys who represented the defendant at first were not the ones who represented him in this trial. The latter were appointed by the court after the Federal charge was dismissed and the employment of the first attorneys had ended. By our holding on this point, we do not approve or sanction any practice of holding a prisoner incommunicado or of unreasonably restricting his visit with counsel, relatives or friends. Such a practice has the earmarks of a purpose to coerce and evidence thereof might well be the determining factor in convincing the court that a statement was not voluntary where otherwise the court would conclude it was voluntary.

The mere fact that the confession was made while de-

fendant was being held in violation of Section 105—12—14, U. C. A. 1943, and not taken before a magistrate without unnecessary delay is not alone sufficient to render a voluntary confession inadmissible in evidence. This is contrary to the decisions of the Supreme Court of the United States under Rule 5 (a), Federal Rules of Criminal Procedure, 18 U. S. C. A. *McNabb* v. *United States,* 318 U. S. 332, 63 S. Ct. 608, 87 L. Ed. 819; *Anderson* v. *United States,* 318 U. S. 350, 63 S. Ct. 599, 87 L. Ed. 829; *United States* v. *Mitchell,* 322 U. S. 65, 64 S. Ct. 896, 88 L. Ed. 1140; *Upshaw* v. *United States,* 335 U. S. 410, 69 S. Ct. 170, 182, 93 L. Ed. 100.

In the *McNabb case,* the officers delayed taking the prisoners before a magistrate in order to secretly question them and after several days of interrogation and other psychological pressure they confessed. The court held that the purpose of requiring promptness in bringing a prisoner before a magistrate is to check secret interrogation and that a confession made during such illegal detention whether or not it results from torture either physical or psychological is inadmissible. In the *Mitchell case,* it was found that the confession was made spontaneously within a few minutes after the arrest and before the illegal detention began, and that a delay of eight days thereafter in taking the prisoner before a magistrate does not render the confession inadmissible because there was no disclosure induced by illegal detention and the evidence was not obtained in violation of the prisoner's rights. In the *Upshaw case,* a voluntary confession was held inadmissible where obtained after thirty hours delay in taking the prisoner before a magistrate for the purpose of secret questioning in order to obtain sufficient evidence to hold him, because the confession was the fruits of the wrongdoing of the officers. It does not appear whether the same result would have been reached had the delay been merely an oversight or neglect without a purpose of secret questioning to ob-

tain evidence. There was a dissent in the *McNabb* case and four justices dissented in the *Upshaw case*. In both dissents and in the prevailing opinion in the *Mitchell case*, it was held that rules of evidence should not establish an indirect way of disciplining officers for misconduct.

Although the federal statute construed in the *McNabb case* has for many years been the law and is similar to the laws of long standing in most states, as far as we can find no prior case has excluded a voluntary confession because the accused had not been promptly taken before a magistrate at the time he confessed. We find no state court which has adopted such a rule and several have expressly rejected it. See Mr. Justice REED's dissent in the *Upshaw case* where he cites the folowing cases:

"*Fry* v. *State*, 78 Okl. Cr. 299, 147 P. 2d 803, 810, 811; *State* v. *Folkes*, 174 Or. 568, 150 P. 2d 17, 25; *State* v. *Smith*, 158 Kan. 645, 149 P. 2d 600, 604; *People* v. *Malinski*, 292 N. Y. 360, 55 N. E. 2d 353, 357, 365; *State* v. *Collett*, Ohio App., 58 N. E. 2d 417, 426, 427 [44 Ohio Law Abst. 225]; *State* v. *Nagel*, 75 N. D. 495, 28 N. W. 2d 665, 679; *State* v. *Ellis*, 354 Mo. 998, 193 S. W. 2d 31, 34 [37]; *Finley* v. *State*, 153 Fla. 394, 14 So. 2d 844; *State* v. *Browning*, 206 Ark. 791, 178 S. W. 2d 77, 78—80; *Russell* v. *State*, 196 Ga. 275, 26 S. E. 2d 528, 534."

Unlike the federal rule which excludes evidence obtained in violation of the 4th Amendment to the United States Constitution prohibiting unreasonable search and seizure without a warrant, these federal courts' confessions were not obtained in violation of any constitutional provision. *Boyd* v. *United States,* 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746; *Weeks* v. *United States,* 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652. Contrary to those decisions, this court has expressly refused to exclude such evidence. *State* v. *Aimes,* 62 Utah 476, 220 P. 704, 32 A. L. R. 375. The rule established by the *McNabb* and *Upshaw cases* is in that respect contrary to the rule previously recognized by the Supreme Court of the United States. *Olmstead* v. *United States,* 277 U. S. 438, 48 S. Ct. 564, 72 L. Ed. 944, 66 A. L. R. 376, that reliable evidence is admissible even

though illegally obtained as long as no constitutional provision was violated. The *McNabb* rule is not sustained by the decisions excluding evidence obtained by wire tapping which are based on an explicit statutory directive that information so obtained should not be divulged. *Nardone* v. *United States,* 302 U. S. 379, 58 S. Ct. 275, 82 L. Ed. 314; *Goldstein* v. *United States,* 316 U. S. 114, 62 S. Ct. 1000, 86 L. Ed. 1312.

Rules excluding evidence because in obtaining it the officer violated a law have been criticized by writers and jurists, because they allow known criminals to go free in order to discipline the offending officers. It requires the court to try a collateral issue and requires the meting out of punishment without a formal complaint. 8 Wigmore on Evidence, 3rd Ed. Sections 2183, 2184, 2184a, 2184b and 2185, Justice REED's dissent in the *Upshaw case,* supra: "Inbau, The Confession Dilemma in the United States Supreme Court, 43 Ill. L. Rev. 442; 42 Mich. L. Rev. 679; 56 Harv. L. Rev. 1008; 47 Col. L. Rev. 1214." Though about half of the states have followed the federal rule excluding evidence obtained by unlawful search and seizure under the emotion developed during prohibition, we find no state decision which excludes a voluntary confession because made at a time while the accused was being held without being taken promptly before a magistrate and many states have expressly refused to follow that rule. Twice since the *McNabb case* we have held contrary to such rule. *State* v. *Mares,* 113 Utah 225, 192 P. 2d 861; *Mares* v. *Hill,* 118 Utah 484, 222 P. 2d 811.

To exclude such evidence deprives the state of reliable evidence for the purpose, it is said, to check the practice of secret questioning of prisoners. But it is not unlawful for officers to question prisoners suspected of crime as long as no coercion, physical or psychological, is exerted and no unfair advantage is taken. *State* v. *Braasch*

and Sullivan, 119 Utah 450, 229 P. 2d 189; *Lyons* v. *Oklahoma,* 322 U. S. 596, 64 S. Ct. 1208, 88 L. Ed. 1481; *Lisenba* v. *California,* 314 U. S. 219, 62 S. Ct. 280, 86 L. Ed. 166. No doubt the *McNabb-Upshaw* rule will induce officers to take their prisoners more promptly before a magistrate but usually this will not prevent them from questioning their prisoners, for in most cases there is sufficient evidence to hold the prisoner on some charge and the questioning can proceed after taking the prisoner before the magistrate either before or after the preliminary hearing. It is only in case where a bailable offense is charged and the prisoner is prepared to furnish immediate bail that he will immediately be relieved from questioning. In the *McNabb case,* as disclosed on the retrial, the prisoners were immediately taken before a magistrate who set a later date for the preliminary hearing, and thus the questionings complained of were legal and their confessions admitted in evidence on the retrial. *McNabb* v. *United States,* 6 Cir., 142 F. 2d 904. However, promptly taking the prisoner before a magistrate will make public the knowledge that he is being held, his relatives, friends and attorney, if any, in the neighborhood, will have the means of advising him, he will be given the opportunity of procuring counsel if he is able, and if not, to require the state to eventually furnish him with legal advice. This will have the desirable effect of helping the ignorant and inexperienced more than those who know their way around.

Rules of evidence should aid the court in correctly determining the facts in the case. 3 Wigmore on Evidence, 3rd Ed., sections 822, 823, 824 and 851; *Lisenba* v. *California,* supra; *State* v. *Folkes,* 174 Or. 568, 150 P. 2d 17. Excluding a confession because made while the maker was in custody and not promptly taken before a magistrate would greatly hinder rather than aid the court in correctly determining the facts, for there is nothing about

being in custody in the absence of cooercion which would show any reason or motive for fabricating a confession. But where a confession is involuntary or coerced, it might well be that the maker confessed falsely to avoid more torture. However, skilled police officers often are able to tie a confession in with demonstrable facts so as to establish or disprove the accuracy of any statement made, so it sometimes happens that even coerced confessions are, in view of the corroborating circumstances disclosed, obviously true. But even in such cases a coerced confession is not admissible in evidence, probably partially because of our abhorrence of cruelty. Thus, if the prisoner can establish that the confession is involuntary, he is protected against it being used against him, but whether there was coercion or torture is often a disputed question and courts are not always able to discern what the truth in the matter is. There are advantages and disadvantages to any rule in this respect which can be formulated but probably the best rule is that such a confession is admissible where it is voluntary, otherwise it is not admissible. That is the rule that has been followed by this court in the past. *State* v. *Mares,* supra; *Mares* v. *Hill,* supra; *State* v. *Crank,* 105 Utah 332, 142 P. 2d 178, 170 A. L. R. 542, and we think in view of all the implications involved the better rule.

The defendant's claim that he was convicted without due process of law, under Section 1 of the Fourteenth Amendment and Section 7, Article 1, of Utah's Constitution, is also incorrect. The *McNabb-Upshaw* rule expressly does not involve constitutional due process but only the construction of the former federal statute and the present succeeding federal criminal procedure rule. *Watts* v. *Indiana,* 338 U. S. 49, 69 S. Ct. 1347, 93 L. Ed. 1801; *Harris* v. *South Carolina,* 338 U. S. 68, 69 S. Ct. 1354, 1357, 93 L. Ed. 1815; *Turner* v. *Pennsylvania,* 338 U. S. 62, 69 S. Ct. 1352, 1357, 93 L. Ed. 1810, deal with constitutional due process, but they merely hold that a conviction lacks due

process where an involuntary confession is admitted at the trial. In *Watts* v. *Indiana,* supra, Mr. Justice DOUGLAS, in his concurring opinion, contends that the use of a confession obtained while the confessor is imprisoned and not promptly taken before a magistrate is a lack of due process, but no other justice concurred in that contention. The opinion of Mr. Justice FRANKFURTER which announced the court's judgment and was concurred in by two other justices used the failure to promptly take the defendants before a magistrate only incidentally along with many other elements of coercion, but did not hold that it was alone sufficient. He emphasized that "Ours is the accusatorial as opposed to the inquisitorial system" and said that "A confession by which life becomes forfeit must be the expression of free choice * * * When a suspect speaks because he is overborne, it is immaterial whether he has been subjected to a physical or a mental ordeal. Eventual yielding to questioning under such circumstances is plainly the product of the suction process of interrogation and therefore the reverse of voluntary." The main elements which he relies on is the long periods of interrogation, not the failure to promptly take the confessor before a magistrate. There is nothing in his opinion which indicates that he agrees with Mr. Justice DOUGLAS' contention. Mr. Justice BLACK also concurred in the result on the ground that the confessions were involuntary, the other four justices dissented except that Mr. Justice JACKSON concurred with the result in the *Watts case* only. Thus, under those decisions since this confession was voluntary, there was here no lack of due process. Judgment is affirmed.

McDONOUGH and CROCKETT, JJ., concur.

LATIMER, Justice (concurring in the results).

I concur in the results.

This case points up the difficulties a state would en-

counter in the detection and prosecution of crimes if we were to adopt the rule that failure to take an accused before a magistrate without delay would render a prior voluntary confession inadmissible. It may be that some of the United States Supreme Court cases cited by Mr. Justice WADE hold that under the Federal rules of practice delay alone is sufficient, but I sense in those cases an underlying concept that the delay must in some degree influence the giving of the confession. It is difficult to reason that failure to proceed forthwith to a magistrate reverts back and destroys the effect of a prior voluntary confession, which, having been given, cannot be influenced by the delay.

In this case, the twenty-day lapse between the confession and arraignment played no part in causing the defendant to confess, and the time he was incarcerated prior to his confession was not because of improper or illegal acts of the arresting officer. He was arrested on August 14, 1949, for interstate transportation of a stolen automobile. Two days later, he was interviewed by Federal Bureau of Investigation officers and on the 20th day of August he was charged with violation of the Dyer act, 18 U. S. C. A. §§ 2311—2313. On August 22nd, he was arraigned before a Federal Commissioner, and three days later pleaded not guilty to the charge. He had the benefit of counsel during these proceedings. While awaiting trial on the federal offense, he voluntarily confessed to having committed a murder in the state of Montana. In an effort to verify the statements made in this confession, he was taken to Montana and then returned to Ogden on September 6, 1949. The state of Montana preferred murder charges against him on September 8th, and a warrant of arrest on this charge was furnished to the sheriff of Weber County at Ogden. Upon receipt of the warrant of arrest for murder, and apparently to permit the defendant to be extradited to Montana, the federal authorities dismissed

the federal offense. While being held for delivery to the state of Montana, and on the 10th day of September, 1949, the defendant, at his own request, made a full and complete confession of the murder in this case. On the 12th day of September, he voluntarily accompanied officers to the scene of the crime to re-enact the murder and to point out the places where he had secreted the articles of apparel worn by the young victim of his murder.

Undoubtedly, there was some unaccountable delay after the confession and before the defendant was taken before a committing magistrate of this state to plead to the present charge, but I am unable to comprehend how this, in any way, caused or coerced him to confess to the crime. This delay, if unnecessary, was subsequent to his statement of guilt. Moreover, there was not a single day prior to his confession that the defendant was unnecessarily confined. He was under felony charges at all times, and he makes no contention that he could have furnished a bail bond. It would be stretching the doctrine of the inadmissibility of involuntary confessions to its breaking point to hold that an accused being held for one offense could not confess to another. Fundamental and constitutional rights of a defendant can be protected without denying law enforcement agencies the right to obtain and use voluntary confessions which, even though given while in custody, embody expressions of free choice and from the evidence were apparently freely and voluntarily given.

WOLFE, Chief Justice, concurring in the results.

I concur with the results of the opinion of Mr. Justice WADE for the reasons stated in the opinion of Mr. Justice LATIMER which latter opinion states directly and succinctly the facts and reasons upon which I base my concurrence.

I add to my concurrence a notation in regard to one

statement made by Mr. Justice LATIMER. There may be cases where a defendant may be held under a fictitious charge and not in good faith in order to attempt to elicit a confession of a graver crime of which he is suspected. While it would appear that in such case the same rule would apply, to wit, that the detention of the defendant would itself have to be a causative element in inducing the confession before it could be said to be involuntary, I prefer to leave that question for decision when it arises. Neither the opinions of Mr. Justice WADE nor Mr. Justice LATIMER hold to the contrary, but in case there may be an attempt to spell out the opinion of Mr. Justice LATIMER, an implication that in no case could the question be raised as to the bona fides of a detention during which a confession is given or elicited, I desire to add these comments.